## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ZYNEX, INC., *et al.*,[1] | § | Case No. 25-90810 (ARP) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## NOTICE OF FILING OF PLAN SUPPLEMENT TO THE THIRD AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ZYNEX, INC. AND ITS DEBTOR AFFILIATES

**PLEASE TAKE NOTICE** that, on February 7, 2026, Zynex, Inc. ("**Zynex**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") filed the *Third Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization of Zynex, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 264] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan and Disclosure Statement**", the "**Plan**" or the "**Disclosure Statement**", as applicable),[2] pursuant to sections 1125 and 1126 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas.

**PLEASE TAKE FURTHER NOTICE** that as contemplated by the Plan and Disclosure Statement, the Debtors may file one or more Plan Supplements. The Plan Supplement, as defined in the Plan, means the compilation of documents and/or forms of documents, agreements, schedules, and exhibits to the Plan that will be filed by the Debtors with the Bankruptcy Court in advance of Confirmation, and all schedules, exhibits, ballots, solicitation procedures, and other documents and instruments related thereto, as may be amended, supplemented, or modified from time to time.

**PLEASE TAKE FURTHER NOTICE** that this Plan Supplement includes the following documents (in each case, as may be amended, modified, or supplemented from time to time in accordance with the Plan and Disclosure Statement:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Zynex, Inc. (5169); Zynex Monitoring Solutions, Inc. (4516); Zynex NeuroDiagnostics, Inc. (4515); Zynex Medical, Inc. (1963); Pharmazy, Inc. (0056); Kestrel Labs, Inc. (3775); and Zynex Management LLC (1267). The location of the Debtors' service address for purposes of these chapter 11 cases is: 9655 Maroon Circle Englewood, CO 80112. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Zynex.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan and Disclosure Statement.

| Exhibit | Document |
|---------|----------|
| A-1 | Identity of GUC Trustee |
| A-2 | GUC Trust Agreement |
| B | Members of the New Board |
| C | Schedule of Assumed Executory Contracts and Unexpired Leases |
| D-1 | Second Amended and Restated Articles of Incorporation |
| D-2 | Second Amended and Restated Bylaws |
| E | Summary of DOJ Settlement |
| F | Summary of SEC Resolution |
| G | Summary of Projected Recoveries |
| H | Transaction Steps Memorandum |
| I | Exit Credit Agreement Term Sheet |

**PLEASE TAKE FURTHER NOTICE** that the documents, schedules, and other information contained in the Plan Supplement are not final and remain subject to ongoing negotiations among the Debtors and certain other interested parties in accordance with the Plan and the Restructuring Support Agreement, and therefore may be modified, amended, or supplemented from time to time.

**PLEASE TAKE FURTHER NOTICE** that the respective rights of the Debtors and certain other parties in interest are expressly reserved, subject and pursuant to the terms and conditions set forth in the Plan and Disclosure Statement and the Restructuring Support Agreement, to amend, revise, or further supplement the Plan Supplement, and any of the documents and designations contained herein in accordance with the Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and any other order of the Court. The posting/filing of the forms of the documents included in the Plan Supplement shall not be deemed as acceptance of such document by any party to the Restructuring Support Agreement or the Committee, or a waiver of any of the rights of any such parties under the Restructuring Support Agreement, the Plan and Disclosure Statement, the Bankruptcy Code, or otherwise. Each of the documents contained in the Plan Supplement or its amendments and supplements is subject to the consent and approval rights provided in the Plan and Disclosure Statement and the Restructuring Support Agreement.

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement shall be deemed incorporated into and part of the Plan and Disclosure Statement as if set forth therein in full. The documents contained in the Plan Supplement are integral to, and are considered part of, the Plan and Disclosure Statement. If the Plan and Disclosure Statement is approved, the documents contained in the Plan Supplement shall also be approved pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek confirmation of the Plan and final approval of the Disclosure Statement at the Confirmation Hearing to be held before the Honorable Alfredo R. Perez, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Avenue, 4th Floor, Houston, Texas 77002, on March 19, 2026 at 9:00 a.m. (prevailing Central Time). The Confirmation Hearing may be further continued from time to time without further notice other than the advisement or announcement of the adjourned date(s) by the Debtors in open court or by the filing of a notice or hearing agenda on the docket.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Disclosure Statement, the Plan Supplement, and related documents are accessible, free of charge, on the Solicitation Agent's website at https://dm.epiq11.com/zynex. Copies of the Plan, the Disclosure Statement, the Plan Supplement, and related documents may also be obtained free of charge: (a) by contacting the Solicitation Agent by phone at (877) 753-7768 (toll free, U.S.& Canada) or +1 (503) 683-8271 (international); (b) by emailing zynexinfo@epiqglobal.com (with "Zynex Solicitation Inquiry" in the subject line); or (c) by writing to Zynex, Inc., c/o Epiq Ballot Processing Center, 10300 SW Allen Boulevard, Beaverton, OR 97005.  The Plan, the Disclosure Statement, the Plan Supplement, and related documents are also available for a fee through the Court's electronic case filing system at https://ecf.deb.uscourts.gov/ using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).

[*Remainder of Page Left Intentionally Blank*]

Houston, Texas
March 2, 2026

Respectfully Submitted,

_/s/ Omar Alaniz_____

**REED SMITH LLP**
Omar J. Alaniz (24040402)
Dylan T.F. Ross (24104435)
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Telephone:   (469) 680-4200
Facsimile:   (469) 680-4299
Email:        oalaniz@reedsmith.com
                  dylan.ross@reedsmith.com

*Co-Counsel for Debtors and Debtors in
Possession*

**SIMPSON THACHER & BARTLETT LLP**
Elisha D. Graff (admitted *pro hac vice*)
Moshe A. Fink (admitted *pro hac vice*)
Rachael L. Foust (admitted *pro hac vice*)
Zachary J. Weiner (admitted *pro hac vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email:        egraff@stblaw.com
                  moshe.fink@stblaw.com
                  rachael.foust@stblaw.com
                  zachary.weiner@stblaw.com

*Co-Counsel for Debtors and Debtors in
Possession*

## Exhibit A-1

## Identity of GUC Trustee

In accordance with the Plan, the Committee has selected, and the Ad Hoc Noteholder Group has approved, Heather Barlow to serve as the GUC Trustee and administer the GUC Trust in accordance with the Plan and the GUC Trust Agreement.

Ms. Barlow is a Managing Director at Dundon Advisers LLC where she co-leads the firm's major mass tort practice. Ms. Barlow's recent case experience includes: The Archdiocese of New Orleans, The Diocese of Albany, Tehum Care Services, TPC Group and Wellpath restructuring matters. She is a bankruptcy expert and started her investment banking career with Chase Manhattan Bank in 1993. Ms. Barlow's financial advisory and restructuring experience also includes buy-side roles and representations, advisory work related to contested confirmation valuations, purchasing of bonds (long/short), trade and litigation claims, and providing expert testimony and declarations.

In a fiduciary capacity, she currently serves as the Trustee of the Mallinckrodt General Unsecured Creditor Trust, three of the non-opioid, litigation trusts for ENDO International, Structurlam Liquidating Trust, and SWC Liquidating Trust. Additionally, she serves as the Future Claims Representative in the Presperse Trust.

## Exhibit A-2

**GUC Trust Agreement**

## GUC TRUST AGREEMENT

This GUC Trust Agreement (as it may be amended, modified, supplemented or restated from time to time, this "**Agreement**") dated as of [•, 2026], is made and entered into by and among the Debtors,[1] as settlors, and Heather Barlow, solely as trustee of the GUC Trust referred to herein (in such capacity, the "**GUC Trustee**"), and creates and establishes the trust (the "**GUC Trust**")referenced herein and is executed in connection with and pursuant to the terms of the [*Third Amended Combined Disclosure Statement and Joint Plan of Reorganization of Zynex, Inc. and its Affiliated Debtors Pursuant to  Chapter 11 of the Bankruptcy Code* [Docket No. 263]] (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof, and including the Plan Supplement, the Global Settlement Term Sheet attached as Exhibit A to the Plan, and all other exhibits and attachments thereto, collectively, the "**Plan**"), which Plan provides for, among other things, the establishment of the GUC Trust evidenced hereby.[2]

## RECITALS

WHEREAS, each of the Debtors filed a voluntary petition for relief (collectively, the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on December 15, 2025 (the "**Petition Date**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), which are being jointly administered under Case No. 25-90810;

WHEREAS, on January 7, 2026, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (as may be amended from time to time, the "**Committee**") in the Chapter 11 Cases;

WHEREAS, on February 7, 2026, the Debtors filed the Plan;

WHEREAS, on March [●], 2026, the Bankruptcy Court entered its order confirming the Plan [Docket No. ●] (the "**Confirmation Order**");

WHEREAS, this Agreement is entered into to effectuate the establishment of the GUC Trust as provided in the Plan and the Confirmation Order;

WHEREAS, the Plan provides, among other things, as of the effective date of the Plan (the "**Effective Date**"), for (i) the creation and establishment of the GUC Trust for the benefit of holders of Allowed General Unsecured Claims and Allowed Convertible Notes Claims (collectively, as holders of the GUC Trust Class B Interests, along with the holders of the GUC Trust Class A Interests, the "**GUC Trust Beneficiaries**"), (ii) the distribution to the GUC Trust Beneficiaries of the GUC Trust Interests (as defined herein), (iii) the automatic transfer to the GUC Trust of the GUC Trust Assets, as well as the rights and powers of each Debtor in such GUC Trust Assets, free and clear of all Claims, Interests, Liens, and other encumbrances or interests of any kind, (iv) the reconciliation

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Zynex, Inc. (5169); Zynex Monitoring Solutions, Inc. (4516); Zynex NeuroDiagnostics, Inc. (4515); Zynex Medical, Inc. (1963); Pharmazy, Inc. (0056); Kestrel Labs, Inc. (3775); and Zynex Management LLC (1267).

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

or other resolution of the Class 3 General Unsecured Claims, (v) the prosecution, settlement, or other monetization of the GUC Trust Claims and Causes of Action and other GUC Trust Assets by the GUC Trustee and the distribution of the proceeds therefrom to the GUC Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and this Agreement;

WHEREAS, the GUC Trust is intended to qualify as a liquidating trust within the meaning of United States Treasury Regulation (hereinafter "**Treasury Regulation**") section 301.7701-4(d) and to be exempt from the requirements of the Investment Company Action of 1940;

WHEREAS, the GUC Trustee and the GUC Trust Beneficiaries agree to treat, for all federal income tax purposes, the transfer of the GUC Trust Assets to the GUC Trust as a deemed transfer of the GUC Trust Assets by the Debtors to the GUC Trust Beneficiaries on account of their Allowed General Unsecured Claims under the Plan, followed by a deemed transfer of the GUC Trust Assets by the GUC Trustee to the GUC Trust in exchange for the beneficial interests herein, and to treat the GUC Trust Beneficiaries as the grantors and owners of the GUC Trust in accordance with Treasury Regulation section 301.7701-4(d);

WHEREAS, the GUC Trust is intended to be treated as a grantor trust for federal income tax purposes pursuant to sections 671-677 of the Internal Revenue Code of 1986 as amended ("**IRC**"), with the GUC Trust Beneficiaries treated as the grantors of the GUC Trust, except with respect to any DOF pursuant to Section 12.10.4;

WHEREAS, the Plan provides that $750,000 will be transferred to the GUC Trust by the Ad Hoc Noteholder Group in exchange for the GUC Trust Class A Interests, which $750,000 will be utilized to fund administrative expenses of the GUC Trust, including, without limitation, the prosecution of the GUC Trust Claims and Causes of Action;[3] and

WHEREAS, the Bankruptcy Court shall have jurisdiction over the GUC Trust, the GUC Trustee, and the GUC Trust Assets as provided herein and in the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Debtors, the GUC Trustee, and the members of the GUC Trust Advisory Committee (as defined herein) set forth on the signature pages hereto hereby agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1   <u>Definitions</u>. The following capitalized terms have the meanings herein as described below:

1.1.1   "**Cause**" shall mean, with respect to the GUC Trustee or any member of the GUC Trust Advisory Committee:

(i)   such Person's conviction of a felony or any crime involving moral turpitude;

---

[3] *See Exhibit 6 to Plan*, at 2 n.4.

(ii) any act or failure to act by such Person involving actual dishonesty, willful misconduct, gross negligence, fraud, material misrepresentation, theft, embezzlement, or knowing violation of law in the performance of his/her/its duties hereunder as determined by a Final Order of a court of competent jurisdiction;

(iii) such Person's failure to substantially perform their duties under this Agreement following such person having received written notice from the GUC Trustee or the majority of the members of the GUC Trust Advisory Committee setting out the events giving rise to such Cause and a 30-day period to commence for the purpose of curing such Cause provided such person continues to diligently pursue such cure;

(iv) such Person's breach of fiduciary duties or an unresolved conflict of interest; or

(v) such Person's incapacity, such that they presently are, and are expected to be for more than ninety (90) consecutive days, unable to substantially perform their duties under this Agreement.

1.1.2   "**GUC Trust Advisory Committee**" shall mean the Committee constituted pursuant to Article IV.L.2 of the Plan and Article VII hereof.

1.1.3   "**GUC Trust Class A Interests**" shall mean, the interests in the GUC Trust held by the members of the Ad Hoc Noteholder Group as providers of the New Money GUC Trust Funding.

1.1.4   "**GUC Trust Class B Interests**" shall mean the interests in the GUC Trust to be distributed to Holders of Allowed Convertible Notes Claims and Holders of Allowed General Unsecured Claims in accordance with the Plan.

1.1.5   "**GUC Trust Interests**" shall mean, collectively, the GUC Trust Class A Interests and the GUC Trust Class B Interests.

1.1.6   "**GUC Truste**e" shall mean (x) initially, the Person named in the introductory paragraph to this Agreement as the GUC Trustee, and (y) any successors or replacements duly appointed under the terms of this Agreement.

1.1.7   "**New Money GUC Trust Funding**" means (i) $750,000, to be contributed to the GUC Trust by the Ad Hoc Noteholder Group and (ii) additional amounts (if any) contributed to the GUC Trust by members of the Committee, which, in each of the preceding clauses (i) and (ii), shall be a subject to a 1.3x multiple on invested capital.

1.1.8   "**Person**" has the meaning set forth in § 101(41) of the Bankruptcy Code, including, without limitation, any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof or other entity.

1.1.9   "**Transfer**" shall mean, with respect to a GUC Trust Interest, any transfer, sale, pledge, assignment, conveyance, gift, bequest, inheritance, grant, distribution, hypothecation or other disposition of or creation or a security interest in such GUC Trust Interest, whether voluntarly or by operation of law. "**Transferor**," "**Transferee**," and "**Transferred**" shall have correlative meanings.

1.2    Plan and Confirmation Order Control. In the case of any direct conflict between the terms of this Agreement and the terms of the Plan, the terms of this Agreement shall govern and control. In the case of any inconsistency between the terms of this Agreement and the terms of the Confirmation Order, the terms of the Confirmation Order shall govern and control.

**ARTICLE II**
**ESTABLISHMENT, PURPOSE, AND**
**FUNDING OF TRUST; ESTABLISHMENT OF RESERVES**

2.1    Creation and Name; Formation.

2.1.1   Upon the Effective Date of the Plan, the GUC Trust is hereby created. The GUC Trustee may conduct the affairs of the GUC Trust under the name of the "**ZY GUC Trust**," or such variation thereof as the GUC Trustee sees fit, and references herein to the GUC Trust shall include the GUC Trustee acting on behalf of the GUC Trust. The parties to this Agreement intend that this Agreement shall constitute the governing instrument of the GUC Trust.

2.2    Purpose of Trust. Upon the Effective Date, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, the GUC Trust is hereby established for the purpose of, among other things, (i) collecting, administering, distributing and liquidating the GUC Trust Assets for the benefit of the GUC Trust Beneficiaries in accordance with the terms of this Agreement, the Plan, and the Confirmation Order, and (ii) making distributions to the GUC Trust Beneficiaries, in each case as required by the Plan, the Confirmation Order, and this Agreement. The Debtors and the Reorganized Debtors shall have no liability with respect to the distribution or payment of any proceeds of the GUC Trust Assets to any of the GUC Trust Beneficiaries, nor shall they have any liability with respect the GUC Trust Interests or any claims exchanged therefor. The activities of the GUC Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan and Confirmation Order. The GUC Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation section 301.7701-4(d) and the primary purpose of the GUC Trust shall be to liquidate and distribute the GUC Trust Assets to the GUC Trust Beneficiaries and the GUC Trustee understands and agrees that the GUC Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust as set forth in the Plan.

2.3    Transfer of GUC Trust Assets.

2.3.1   Pursuant to, and in accordance with Article IV.L.1 of the Plan and the Confirmation Order, on the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the GUC Trust all of their rights, title, and interest in and to all of the GUC Trust Assets, including the GUC Trust Claims and Causes of Action, in

4

accordance with the Plan. The GUC Trust Assets will be transferred to the GUC Trust free and clear of any liens or other claims by the Debtors, any creditor, or other entity.

2.3.2   Each Debtor hereby grants, releases, assigns, conveys, transfers, and delivers, without recourse, on behalf of the GUC Trust Beneficiaries, all of the GUC Trust Assets owned, held, possessed, or controlled by such Debtor to the GUC Trustee as of the Effective Date, in trust for the benefit of the GUC Trust Beneficiaries for the uses and purposes as specified in this Agreement and the Plan, and all such GUC Trust Assets shall be automatically vested in the GUC Trust on the Effective Date, free and clear of all Claims, Interests, Liens, other encumbrances and interests. The transfer of the GUC Trust Assets shall include, without limitation, all evidentiary privileges of any type or nature whatsoever, including attorney-client privilege, work-product privilege or doctrine, and any other evidentiary privilege or immunity attaching to any documents or communications in any form, including electronic data hosted on remote servers, and any other applicable evidentiary privileges of each of the foregoing (collectively, the "**Privileges**") belonging to the Debtors in respect of the GUC Trust Assets that, prior to the Effective Date, belonged to the Debtors pursuant to applicable federal, state, and other law, which shall vest in the GUC Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the GUC Trust and the GUC Trust Beneficiaries; provided, that, solely in connection with the commencement, prosecution, pursuit, or settlement of the GUC Trust Claims and Causes of Action, the GUC Trust shall hold and stand in the same position as the Debtors, their Estates, and the Committee as to Privileges belonging to the Debtors; provided, however, that the Debtors shall not be deemed to have transferred any documents, information, or privileges related to (i) any claims or causes of action that are released under the Plan, or (ii) any other claims or causes of action or assets that do not constitute GUC Trust Assets or GUC Trust Claims and Causes of Action; provided, further, that the foregoing proviso shall not prevent the transfer of any documents, information, or privileges to the extent that any such documents, information, or privileges also relate to GUC Trust Assets. The Debtors shall have no claim to, right, or interest in, whether direct, residual, contingent, or otherwise, the GUC Trust Assets once such assets have been transferred to the GUC Trust. None of the Debtors or the Reorganized Debtors shall have any further obligations with respect to the Allowed General Unsecured Claims or Allowed Convertible Notes Claims under the Plan or with respect to the distribution or payment of any proceeds of the GUC Trust Assets to any of the GUC Trust Beneficiaries following the transfer of the GUC Trust Assets to the GUC Trust in accordance with this Agreement and the Plan, except that the Debtors and/or Reorganized Debtors shall, from time to time, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors and/or Reorganized Debtors shall take or cause to be taken such further action, in each case as the GUC Trustee may reasonably deem necessary and appropriate, to vest or perfect in or confirm to the GUC Trustee title to and possession of the GUC Trust Assets. For the avoidance of doubt, nothing herein shall excuse or release the Debtors from their express obligations under the Plan, this Agreement, or any documentation to which any of the Debtors is a party relating to the Plan, this Agreement, or the GUC Trust Assets.

2.4   Books and Records; Cooperation.

2.4.1   On the Effective Date, or as soon as practicable thereafter, the Debtors or the Reorganized Debtors (as applicable) shall transfer or cause to be transferred copies of all

documents, books, and records of the Debtors (whether or not they existed prior to or after the Petition Date) reasonably requested by the GUC Trustee related to the GUC Trust Assets to the GUC Trust. The Debtors and the Reorganized Debtors, as applicable, shall not be permitted to destroy or otherwise abandon any documents reasonably relevant to the GUC Trust Assets without the Ad Hoc Noteholder Group and the Committee's consent prior to the Effective Date or the GUC Trustee's reasonable consent from and after the Effective Date, other than any documents that may be abandoned or destroyed pursuant to the Reorganized Debtors' ordinary business and document retention practices.

      2.4.2   From and after the Effective Date, pursuant to the Plan and Confirmation Order, the Reorganized Debtors shall use commercially reasonable efforts to provide reasonable access to such officers, directors, and employees of the Debtors and their agents, advisors, attorneys, accountants, or any other professionals with knowledge of matters relevant to the GUC Trust Claims and Causes of Action (including, to the extent practicable, any former officers, directors, employees, agents, advisors, attorneys, accountants, or other professionals who owe a continuing duty of cooperation to the Debtors or Reorganized Debtors); provided, however, that, notwithstanding anything herein to the contrary, the Debtors and/or Reorganized Debtors shall not be required to incur any out-of-pocket expenses in connection with any requests from the GUC Trustee.

      2.4.3   The Debtors, Reorganized Debtors, and any party under their control shall: (i) execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed); and (ii) take, or cause to be taken, such further actions to the extent necessary to evidence or effectuate the transfer of the GUC Trust Assets to the GUC Trust and the consummations of the transactions contemplated by this Plan.

      2.4.4   The Debtors, Reorganized Debtors, and any party under their control shall use commercially reasonable efforts to (i) cooperate with the GUC Trustee in connection with the commencement, prosecution, pursuit, or settlement of the GUC Trust Claims and Causes of Action and the fulfilment of the GUC Trustee's duties and (ii) take, or cause to be taken, all such further actions as the GUC Trustee may reasonably request (including, with respect to reasonably cooperating with the GUC Trustee for requests for telephone conferences, interviews, and appearances of current and former directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary) and by providing the last known address of any such individual, to the extent reflected in the books and records of Debtors and to the extent permissible under applicable law), in each case in order to permit the GUC Trustee to investigate, prosecute, protect, and preserve all GUC Trust Claims and Causes of Action; provided, however, that, notwithstanding anything herein to the contrary, the Debtors and/or Reorganized Debtors shall not be required to incur any out-of-pocket expenses in connection with any requests from the GUC Trustee.  To the extent that any request for cooperation or action pursuant hereto results in the Debtors and/or Reorganized Debtors, as applicable, incurring any out-of-pocket expenses, the GUC Trust shall reimburse all such reasonable and documented out-of-pocket expenses incurred by the Debtors and/or the Reorganized Debtors.

      2.4.5   To the extent that any GUC Trust Assets cannot be transferred to the GUC Trust because of a restriction on transferability under applicable non-bankruptcy law that is not

superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such GUC Trust Assets shall be deemed to have been retained by the Debtors or the Reorganized Debtors and the GUC Trustee shall be deemed to have been designated as a representative of the Debtors or the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such GUC Trust Assets on the behalf of the Debtors or the Reorganized Debtors for the benefit of the GUC Trust. Notwithstanding the foregoing, all proceeds of such GUC Trust Assets (net of reasonable costs and expenses related to the transfer of GUC Trust Assets to the GUC Trust (including the reasonable fees and expenses of professionals)), if received by the Debtors, the Reorganized Debtors, or other successor, shall be transferred to the GUC Trust or the GUC Trustee on its behalf to be distributed in accordance with this Agreement and the terms of the Plan.

2.4.6   To the extent there is a dispute with respect to the reasonable cooperation required pursuant to this Section 2.4, the GUC Trustee and the Debtors or Reorganized Debtors, as applicable, shall, first, engage in good faith in an effort to resolve such dispute consensually and, if the parties are unable to resolve such dispute consensually following good faith discussions, thereafter, apply to the Bankruptcy Court for a resolution.

2.5   Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, except as otherwise provided herein, the GUC Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The GUC Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.6   Nature of Trust. The GUC Trust is irrevocable, but this Agreement is subject to amendment and waiver as provided in this Agreement. The GUC Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, limited liability partnership, joint venture, corporation, limited liability company, joint stock company or association, nor shall the GUC Trustee, the GUC Trust Advisory Committee or any of its members, or the GUC Trust Beneficiaries, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the GUC Trust Beneficiaries, on the one hand, to the GUC Trust and the GUC Trustee, on the other hand, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement, the Plan, and the Confirmation Order. The relationship of the GUC Trust Beneficiaries, on the one hand, to the GUC Trust Advisory Committee (or any of its members), on the other hand, shall not be deemed a principal or agency relationship, and the rights of  the GUC Trust Beneficiaries, on the one hand, to the GUC Trust Advisory Committee (or any of its members) shall be limited to those conferred upon them by this Agreement, the Plan, and the Confirmation Order.

2.7   Effectiveness. The effectiveness of this Agreement shall occur upon the Effective Date of the Plan.

2.8   Establishment of GUC Trust Expense Reserve. On the Effective Date, the GUC Trustee shall deposit the New Money GUC Trust Funding into a reserve account (the "**Expense**

Reserve"). The Expense Reserve shall be held separately from the other GUC Trust Assets in an account at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the GUC Trustee and bearing the name "**ZY GUC Trust Expense Reserve**" or words of similar import and shall be used solely to satisfy the expenses of the GUC Trust and GUC Trustee. In no event shall the GUC Trustee or GUC Trust Advisory Committee be required or permitted to use his/her/its personal funds or assets for such purposes.

2.9     Additional Holdback. The GUC Trust shall pay administrative fees and expenses, first, from the proceeds of the New Money GUC Trust Funding. If, at any time, the GUC Trustee determines that the Expense Reserve is not reasonably likely to be adequate to satisfy the current and projected future fees, costs, and expenses of the GUC Trust (including, without limitation, the fees, costs, and expenses of the GUC Trust's professionals), then the GUC Trustee may, in its discretion and in consultation with the GUC Trust Advisory Committee, and subject to the provisions of Section 7.5.4 hereof, (i) reserve an amount, or increase the amount previously reserved, in the Expense Reserve sufficient to satisfy such fees, costs, and expenses from any proceeds of the GUC Trust Assets recovered by the GUC Trust, or (ii) seek additional third-party litigation trust funding for the GUC Trust. For the avoidance of doubt, the GUC Trustee need not obtain the order or approval of the Bankruptcy Court to obtain additional financing for the GUC Trust.

2.10    Disputed Claims Reserve. On and after the Effective Date, the GUC Trustee shall establish the Disputed Claims Reserve. Subject to Article VI of the Plan, Cash in the amount that would be distributable from the GUC Trust Assets on account of any Disputed Claims had such Disputed Claim been Allowed on the Effective Date (as determined in accordance with Section 4.1.1 hereof), together with all earnings thereon (net of any taxes imposed thereon or otherwise payable by the Disputed Claims Reserve), shall be retained by the GUC Trust. The Disputed Claims Reserve shall be held by the GUC Trustee in an account at a nationally recognized bank, financial institution, trust company, or investment/brokerage firm chosen by the GUC Trustee and bearing the name "**ZY GUC Trust Disputed Claims Reserve**" or words of similar import.

2.11    GUC Trust Account. All other Cash held by the GUC Trust, other than the Cash in the Expense Reserve and Disputed Claims Reserve, shall be retained by the GUC Trustee for the benefit of the GUC Trust Beneficiaries as contemplated in the Plan, the Confirmation Order, and this Agreement pending distribution. Cash shall be either (i) held by the GUC Trustee in an interest-bearing account or (ii) invested as set forth in Sections 3.3 and 3.4.2 herein. All such Cash or investments shall be held by the GUC Trustee in an account at a nationally recognized bank, financial institution, trust company, or investment/brokerage firm chosen by the GUC Trustee and bearing the name "**ZY GUC Trust Account**" or words of similar import.

2.12    Cash held in the Expense Reserve, Disputed Claims Reserve, and ZY GUC Trust Account will be held in trust, pending payment or distribution by the Liquidating Trustee. Any Cash remaining in the Expense Reserve or Disputed Claims Reserve after payment of all administrative expenses of the GUC Trust and all Disputed Claims, respectively, shall constitute GUC Trust Assets and shall be distributed to the GUC Trust Beneficiaries in accordance with this Agreement.

**ARTICLE III**
**ADMINISTRATION OF THE TRUST**

3.1    <u>Rights, Powers and Privileges</u>. Upon the Effective Date, the GUC Trustee is appointed as the duly appointed representative of the Debtors and their estates with respect to the GUC Trust Assets. The GUC Trust and the GUC Trustee, as applicable, shall succeed to all of the rights and powers granted to the Debtors in the Plan as it pertains to GUC Trust Beneficiaries. The GUC Trustee shall be a fiduciary and owe fiduciary duties to all GUC Trust Beneficiaries, collectively. As a fiduciary to all GUC Trust Beneficiaries, collectively, the GUC Trustee shall be entitled to rely on any extensions available to a trustee under 11 U.S.C. § 108 in any judicial, arbitration or administrative proceeding, during or after the pendency of these cases. In connection with the administration of the GUC Trust, except as set forth in this Agreement and the Plan, the GUC Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the GUC Trust (including, without limitation, all powers, rights, and duties under applicable law); <u>provided</u> that the GUC Trustee shall not perform any acts that are inconsistent with this Agreement, the Plan, and/or the Confirmation Order. Without limitation, and in addition to any powers and authority specifically set forth in other provisions of the Plan, the GUC Trustee shall have the power to and shall be obligated to:

3.1.1    effect all actions and execute all agreements, instruments, and other documents necessary to reconcile and resolve all Class 3 General Unsecured Claims;

3.1.2    establish, as necessary, disbursement accounts for the deposit and distribution of all amounts to be distributed under the Plan to the GUC Trust Beneficiaries;

3.1.3    consistent with <u>Section 9.1</u> hereof, in reliance upon the Debtors' schedules and the claims register maintained in the Chapter 11 Cases by Epiq Corporate Restructuring, LLC, the Debtors' notice and claims agent, (the "**Debtors' Claims Register**"), maintain a separate register (a "**Trust Claims Register**") evidencing the beneficial interest herein held by each GUC Trust Beneficiary;

3.1.4    review, reconcile, allow, object to, compromise, settle, and withdraw objections to Class 3 General Unsecured Claims, including all Disputed Claims, as appropriate and subject to further terms hereof and the terms of the Plan;

3.1.5    establish, adjust, and maintain reserves for Disputed Claims required to be administered by the GUC Trust (each, a "**Disputed Claims Reserve**");

3.1.6    calculate and make distributions in accordance with this Agreement, the Plan, and the Confirmation Order to the GUC Trust Beneficiaries;

3.1.7    to the extent necessary and required, file quarterly reports in a form reasonably acceptable to the U.S. Trustee;

3.1.8    pay out of the GUC Trust Account any fees to the U.S. Trustee, to the extent required in respect of this Agreement, the GUC Trust Assets, or the GUC Trust;

9

3.1.9    employ and compensate professionals to represent the GUC Trustee with respect to the GUC Trustee's responsibilities;

3.1.10   commence and pursue viable GUC Trust Claims and Causes of Action in accordance with the Plan, the Confirmation Order, and this Agreement;

3.1.11   incur expenses and other obligations of the GUC Trust necessary to carry out the purposes of the GUC Trust in accordance with the Plan and Confirmation Order, and pay or satisfy such obligations from the GUC Trust Assets as set forth in the Plan and Confirmation Order;

3.1.12   subject to Section 7.5.4, to borrow such sums of money or enter into litigation funding agreements, at any time and from time to time, for such periods of time, upon such terms and conditions, from such Persons, for such purposes as the Trustee deems reasonable;

3.1.13   cause the GUC Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the GUC Trust, and file tax returns for the GUC Trust, including any Disputed Claims Reserves, and pay taxes, if any, payable for and on behalf of the GUC Trust as further set forth in Section 12.10 herein; and

3.1.14   exercise such other powers as may be vested in the GUC Trust by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the GUC Trustee to be necessary and proper to implement the provisions of the Plan as it pertains to the General Unsecured Claims, the GUC Trust Assets, and the GUC Trust Beneficiaries.

3.2    Agents and Professionals. Subject to the powers granted to the GUC Trust Advisory Committee pursuant to Article VII hereof, the GUC Trustee (i) may, but shall not be required to, consult with and retain attorneys, accountants, financial advisors, real estate brokers, appraisers, valuation counselors, transfer agents, a third-party disbursing agent, or other parties deemed by the GUC Trustee to have qualifications necessary to assist in the proper administration of the GUC Trust, and the GUC Trustee may terminate any such agent or professional at its discretion, on such terms as may be agreed between the GUC Trustee and such agent or professional, provided, that the legal counsel and financial advisors previously retained by the Official Committee of Unsecured Creditors, shall be retained by the GUC Trustee for a period of thirty (30) days following the creation of the GUC Trust, which period may be extended at the discretion of the GUC Trustee, and (ii) may pay the reasonable salaries, fees, and expenses of such persons, including contingency fees, out of the Expense Reserve, provided, however, that the GUC Trustee shall have the right to require any such agent or professional to submit a scope of work, including anticipated fees and expenses, to be approved in all respects by the GUC Trustee prior to such agent or professional commencing services with respect to any matter to be undertaken on behalf of the GUC Trust, and provided, further, that Bankruptcy Court approval shall not be required in connection with the retention or compensation of any such agent or professional.

3.3    Investment and Safekeeping of GUC Trust Assets. All GUC Trust Assets received by the GUC Trustee shall, until distributed or paid as provided in this Agreement, the Plan, or the Confirmation Order, be held in the GUC Trust for the benefit of the GUC Trust Beneficiaries. The GUC Trustee shall be under no obligation to generate or produce, or have any liability for, interest or

other income on any monies received by the GUC Trust and held for distribution or payment to the GUC Trust Beneficiaries, except as such interest or income shall be actually received by the GUC Trustee. Investments of any monies held by the GUC Trust shall be made and administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the GUC Trustee to invest monies held by the GUC Trustee, or any income earned by the GUC Trust shall be limited to the right and power to invest such monies, pending periodic distributions in accordance with the terms hereof and the Plan. For the avoidance of doubt, the investment powers of the GUC Trustee in this Agreement, other than those reasonably necessary to maintain the value of the GUC Trust Assets and the liquidation purpose of the GUC Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills, and in all cases limited only to those assets permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d). The GUC Trustee shall have no liability in the event of the insolvency or failure of any institution in which they have invested any funds of the GUC Trust.

3.4     Limitations on GUC Trustee. On behalf of the GUC Trust or the GUC Trust Beneficiaries, the GUC Trustee shall not at any time: (i) enter into or engage in any trade or business (other than the management and disposition of the GUC Trust Assets), and no part of the GUC Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the GUC Trust in furtherance of any trade or business, (ii) except as provided in Section 3.3 hereof and below, reinvest any GUC Trust Assets, or (iii) take any action that would jeopardize treatment of the GUC Trust as a "liquidating trust" for federal income tax purposes.

3.4.1     Other than as contemplated by the Plan or Section 3.1.12, the GUC Trustee is not empowered to incur indebtedness.

3.4.2     Subject to Section 3.3 hereof, the GUC Trustee may invest Cash of the GUC Trust, including any earnings thereon or proceeds therefrom, any Cash realized from the liquidation of the GUC Trust Assets, or any Cash that is remitted to the GUC Trust from any other Person, any such investment being made shall be made in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, and which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); provided, however, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities. The GUC Trustee shall have no liability in the event of the insolvency or failure of any institution in which they have invested any funds of the GUC Trust.

3.4.3     The GUC Trustee shall hold, collect, conserve, protect and administer the GUC Trust Assets in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.

3.4.4     Persons dealing with the GUC Trustee shall look only to the GUC Trust Assets to satisfy any liability incurred by the GUC Trustee to such Person in carrying out the terms of this Agreement, and the GUC Trustee shall not have any personal obligation to satisfy any such liability.

11

3.5     Bankruptcy Court Approval of GUC Trustee Actions. Except as provided in the Plan or otherwise specified in this Agreement (including without limitation Section 4.11), the GUC Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. Except as otherwise provided herein, the GUC Trustee shall exercise its business judgment for the benefit of the GUC Trust Beneficiaries in order to maximize the value of the GUC Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the GUC Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the GUC Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the GUC Trust with respect to any of the GUC Trust Assets, this Agreement, or the Plan, including the administration, or distribution of any of the GUC Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the GUC Trust.

3.6     Reliance by GUC Trustee. The GUC Trustee may rely, and shall be protected in acting or refraining from acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties, in each case without obligation to satisfy themselves that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. The GUC Trustee may consult with any and all of the GUC Trustee's professionals and the GUC Trustee shall not be liable for any action taken, omitted to be taken by or suffered by the GUC Trustee in good faith reliance upon the advice of such professionals.

3.7     [Valuation of GUC Trust Assets. As soon as reasonably practicable following the establishment of the GUC Trust, the GUC Trustee shall determine (or cause to be determined) in good faith the value of the GUC Trust Assets, and the GUC Trustee shall apprise the GUC Trust Beneficiaries of such valuation.  Such values will be used consistently by all parties for all federal, state, local, or other income tax purposes.]

3.8     Reservation of Rights Regarding GUC Trust Claims and Causes of Action. No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement as any indication that the GUC Trust will not pursue any and all available GUC Trust Claims and Causes of Action against them. The GUC Trust expressly reserves all rights to prosecute any and all GUC Trust Claims and Causes of Action against any Entity, except as otherwise provided in the Plan or an Order of the Bankruptcy Court. Unless a specific Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the GUC Trust expressly reserves the right to seek adjudication of or otherwise resolve such GUC Trust Claims and Causes of Action; provided, that, for the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, the GUC Trust Assets, including the GUC Trust Claims and Causes of Action, shall not include, and the GUC Trustee shall not have the right to prosecute or otherwise pursue, any Claims or Causes of Action (including Avoidance Actions) against: (i) continuing vendors, suppliers or contract counterparties of the Debtors or Reorganized Debtors, as determined by the Reorganized Debtors; (ii) any officer or employee of the Debtors as of the Petition Date; (iii) the members of the Special Committee; (iv) any director or officer of the Debtors, other than Thomas Sandgaard or Anna Lucsok, solely with respect to Claims and Causes of Action arising out of or relating to conduct by such directors or

officers after August 18, 2025, subject to the outcome of the Investigation; and (v) any other "Released Party" under the Plan.

      3.9    <u>Abandonment</u>. Subject to Section 7.5.4 hereof, if, in the GUC Trustee's reasonable judgment, any non-Cash GUC Trust Assets cannot be sold in a commercially reasonable manner or the GUC Trustee believes in good faith that such property has inconsequential value to the GUC Trust or its GUC Trust Beneficiaries, the GUC Trustee shall have the right to cause the GUC Trust to abandon or otherwise dispose of such property upon notice to the Bankruptcy Court and all parties in interest; <u>provided</u> that nothing herein will prevent the GUC Trustee, with respect to any such abandonment or disposition, from seeking the authorization of the Bankruptcy Court to limit notice with respect to any such relief so long as the GUC Trustee believes in good faith that no party will be prejudiced by the limitation of such notice. No hearing shall be required absent the objection of one or more parties in interest.

**ARTICLE IV**
**DISTRIBUTIONS FROM THE TRUST; PROVISIONS REGARDING CERTAIN GUC TRUST ASSETS**

      4.1.1    <u>Distributions</u>. After the Effective Date, the GUC Trustee shall distribute any and all proceeds of the GUC Trust Assets recovered by the GUC Trust to the GUC Trust Beneficiaries only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, net of any applicable Disputed Claims Reserve (provided that, for the avoidance of doubt, until the New Money GUC Trust Funding, including the 1.3x multiple on invested capital, is repaid in full in cash, any amounts reserved in respect of the Disputed Claims Reserve shall be calculated based on and funded solely from the 25% of proceeds allocable to the holders of GUC Trust Class B Interests) and statutory fees payable to the U.S. Trustee and after funding any reserves deemed necessary or appropriate by the GUC Trustee (subject to Section 7.5.4 hereof).

      4.1.2    The GUC Trustee shall distribute any and all proceeds of the GUC Trust Assets as follows:

    (i) Until such time that the Holders of GUC Trust Class A Interests have received aggregate distributions totaling the amount of the New Money GUC Trust Funding (including the 1.3x multiple on invested capital) (the "**GUC Trust Class A Hurdle**"), then net proceeds of the GUC Trust Assets recovered by the GUC Trust shall be distributed as follows: (a) 75% of such net proceeds shall be distributed on a *pro rata* basis to the Holders of the GUC Trust Class A Interests, and (b) 25% of such net proceeds shall be distributed on a *pro rata* basis to the Holders of the GUC Trust Class B Interests.

    (ii) After satisfaction of the GUC Trust Class A Hurdle, then 100% of the net proceeds of the GUC Trust Assets shall be distributed on a *pro rata* basis to the Holders of the GUC Trust Class B Interests.

      The Holders of GUC Trust Class A Interests and Holders of GUC Trust Class B Interests shall be express third-party beneficiaries of this Agreement and shall be entitled to rely on and enforce its provisions, including, without limitation, this Article IV.

4.2     Provisions Governing Distributions. All distributions to be made under this Agreement shall be made in accordance with the Plan, the relevant provisions of which are incorporated herein by this reference, and the Confirmation Order. Distributions shall be made from time to time in the GUC Trustee's discretion to GUC Trust Beneficiaries in respect of their GUC Trust Interests, provided, however, the GUC Trust must distribute at least annually to the GUC Trust Beneficiaries its net income plus all net proceeds from the sale of assets, except that the GUC Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including Disputed Claims).

4.3     Timing of Distributions. Any payment or other distribution required to be made under the Plan on a day other than a business day shall be due on the next succeeding business day but shall be deemed to have been made on the required date. Any payment of Cash to be made pursuant to the Plan, subject to the terms hereof, shall be deemed made, if by electronic wire transfer, when the applicable electronic wire transfer is initiated by the sending bank or, if by check drawn on a domestic bank, when the earliest occurs of depositing in the mail for the entitled recipient, receipt by the entitled recipient, or delivery to a third-party delivery service for delivery to the entitled recipient.

4.4     Payments Limited to Proceeds of GUC Trust Assets. All payments to be made by the GUC Trustee to or for the benefit of any GUC Trust Beneficiary shall be made only to the extent that the GUC Trust has sufficient funds or reserves to make such payments in accordance with this Agreement and the Plan. Each GUC Trust Beneficiary shall have recourse only to the proceeds of the GUC Trust Assets for distributions under this Agreement and the Plan.

4.5     Aggregation of Distributions. To the extent the substantially similar General Unsecured Claims of multiple General Unsecured Claimants represented by the same law firm are resolved simultaneously or on a significantly similar timeline (including without limitation pursuant to a settlement of a subclass of General Unsecured Claims), nothing herein shall preclude the GUC Trustee from aggregating payments with respect to such General Unsecured Claims and issuing a single check to each applicable law firm, with any further notice and distribution to individual Holders of General Unsecured Claims to be made by each such law firm, provided that the GUC Trustee shall not be empowered or permitted to aggregate payments in the above manner unless the receiving law firm agrees in advance in writing to indemnify the Reorganized Debtors, the GUC Trust, and the GUC Trustee, as applicable, in the event any of them suffers any loss or expense on account thereof.

4.6     Priority of Distributions. Any recovery by the GUC Trust on account of the GUC Trust Assets shall be applied in accordance with the terms of this Agreement, the Plan, and the Confirmation Order; provided, however, that, subject to Section 7.5.4 hereof, the GUC Trust may replenish the Expense Reserve before making distributions to GUC Trust Beneficiaries.

4.7     Setoff Rights. The GUC Trustee may, but shall not be required to, setoff against or recoup from the holder of any Allowed General Unsecured Claim (including any Holders of GUC Trust Class B Interests) on which payments or other distributions are to be made hereunder, claims or defenses of any nature that the GUC Trust may have against such Person. However, neither the failure to do so, nor the allowance of any Claim under the Plan or otherwise, shall constitute a

waiver or release of any such claim, right of setoff, or right of recoupment against the Holder of such Allowed General Unsecured Claim.

        4.8        <u>Right to Settle Claims</u>.

        4.8.1        <u>Authority to Settle and Object.</u> Unless otherwise provided for in the Plan or as otherwise set forth herein, subject to Section 7.5.4 hereof, the GUC Trustee shall have the responsibility and authority for administering, disputing, compromising, and settling or otherwise resolving and finalizing payments or other distributions with respect to Holders of General Unsecured Claims. Any objections to General Unsecured Claims (the "**Disputed General Unsecured Claims**") shall be served and filed by the GUC Trustee on or before the later of (i) one-hundred and eighty (180) days after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court for cause shown). The GUC Trustee may seek Bankruptcy Court approval to establish additional objection, estimation, or other claims reconciliation procedures as the GUC Trustee believes appropriate, including by requesting an estimation proceeding with respect to one or more Disputed General Unsecured Claims. The GUC Trustee shall generally prosecute objections to General Unsecured Claims pending as of the Effective Date and any additional objections it determines to file from and after the Effective Date but shall be entitled to exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any General Unsecured Claims. In addition, subject to the foregoing sentence, the GUC Trustee may, at any time, request that the Bankruptcy Court estimate any contingent General Unsecured Claim, Disputed General Unsecured Claim, or unliquidated General Unsecured Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party previously objected to or sought estimation of such Claim.

        4.8.2        [Reserved].

        4.8.3        <u>Consolidated Procedures/ADR/Estimation</u>. Nothing herein shall limit the GUC Trustee's ability to seek the Bankruptcy Court's assistance in carrying out the purposes of the GUC Trust, including without limitation, the Court's approval of (i) in consultation with the GUC Trust Advisory Committee, (a) consolidated procedures for the approval of multiple Claims resolutions on an omnibus basis, or (b) consolidated procedures for the objection to multiple Claims resolutions on an omnibus basis in compliance with rule 3007-1 of the *Bankruptcy Local Rules for the Southern District of Texas* and section M of *the Procedures for Complex Cases in the Southern District of Texas*, or (ii) with the reasonable consent of the GUC Trust Advisory Committee, alternative dispute resolution procedures for one or more Disputed General Unsecured Claims. Notwithstanding the foregoing, the GUC Trustee may elect to mediate one of more Disputed General Unsecured Claims and pay the reasonable fees and expenses of the mediation, including the GUC Trust's portion of the mediator's fees, out of the Expense Reserve without first obtaining Bankruptcy Court approval.

        4.8.4        <u>Limitation on Debtors'/Reorganized Debtors' Right to Settle Claims</u>. Other than as contemplated by the Plan or the Confirmation Order, the Debtors shall not enter into any settlements with creditors, including but not limited to taxing authorities, that provide for the allowance or estimation of, or otherwise purport to resolve, a General Unsecured Claim, without the reasonable consent of the GUC Trustee, not to be unreasonably withheld.

4.9     No Distributions Pending Allowance. If a Claim or any portion of a Claim is disputed, no payment or distribution shall be made on account of any portion of such Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan or this Agreement.

4.10    Unclaimed and Undeliverable Distributions. In the event that any distribution to any GUC Trust Beneficiary is returned as undeliverable, no distribution to such GUC Trust Beneficiary shall be made unless and until the GUC Trust has determined the then-current address of such GUC Trust Beneficiary, at which time such distribution shall be made to such GUC Trust Beneficiary without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the time the distribution is made. After such date, all unclaimed property or interests in property shall revert to the applicable disbursement account of the GUC Trust without need for a further order by the Bankruptcy Court, to be made available to other GUC Trust Beneficiaries (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of the applicable GUC Trust Beneficiary to such returned property or Interest in property shall be discharged and forever barred.

4.11    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a GUC Trust Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the GUC Trustee shall be entitled, in its reasonable discretion, to refuse to comply with any such conflicting claims or demands.

4.11.1  The GUC Trustee, in its reasonable discretion, may elect to cause the GUC Trust to make no payment or distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. Neither the GUC Trust nor the GUC Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the GUC Trust or GUC Trustee be liable for interest on any funds which may be so withheld.

4.11.2  The GUC Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the GUC Trustee, which agreement shall include a complete release of the GUC Trust and GUC Trustee. Until the GUC Trustee receives written notice that one of the conditions of the preceding sentence is met, the GUC Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the GUC Trust the GUC Trust Beneficiary identified as the owner of that interest in the books and records maintained by the GUC Trustee. The GUC Trustee may deem and treat such GUC Trust Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.11.3 In acting or refraining from acting under and in accordance with this Section 4.12 of the Agreement, the GUC Trustee shall be fully protected and incur no liability to any purported claimant or any other Person to the extent set forth in Article VI of this Agreement.

4.12    Minimum Cash Distributions. The GUC Trust shall not be required to make any distribution of Cash less than fifty dollars ($50) to any GUC Trust Beneficiary.

4.13    Payments to GUC Trust Beneficiaries Do Not Constitute "Disbursements". No distribution by the GUC Trust shall be considered a "disbursement" under 28 U.S.C. § 1930(a)(6) triggering the quarterly fee payment requirement of the Office of the United States Trustee.

## ARTICLE V
## BENEFICIARIES

5.1    Identification and Addresses of GUC Trust Beneficiaries. To determine the actual names and addresses of the GUC Trust Beneficiaries, the GUC Trustee may deliver a notice to the GUC Trust Beneficiaries. Such notice may include a form for each GUC Trust Beneficiary to complete in order to be properly registered as a GUC Trust Beneficiary and to be eligible for distributions under the GUC Trust. Such form may request the GUC Trust Beneficiary's federal taxpayer identification number or social security number if the GUC Trustee determines that such information is necessary to fulfill the GUC Trust's tax reporting and withholding obligations. A GUC Trust Beneficiary may, after the Effective Date, select an alternative mailing address by notifying the GUC Trustee in writing of such alternative distribution address. Absent receipt of such notice, the GUC Trustee shall not be obligated to recognize any such change of address. Such notification shall be effective only upon receipt by the GUC Trustee. The GUC Trustee, in its reasonable discretion, may suspend distributions to any GUC Trust Beneficiary that has not provided its federal taxpayer identification number or social security number, as the case may be, after a request is made pursuant to this Section 5.1. Each GUC Trust Beneficiary's GUC Trust Interest is dependent upon such GUC Trust Beneficiary's classification under the Plan and the status of its Allowed General Unsecured Claim.

5.2    Beneficial Interest Only. The ownership of a GUC Trust Interest shall not entitle any GUC Trust Beneficiary to any title in or to, possession of, management of, or control of any of the GUC Trust Assets or to any right to call for a partition or division of such GUC Trust Assets or to require an accounting, except as specifically provided herein. Except as expressly provided in this Agreement, a GUC Trust Beneficiary shall not have standing to direct or to seek to direct the GUC Trust or GUC Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the GUC Trust Assets.

5.3    Ownership of Beneficial Interests Hereunder. Each GUC Trust Beneficiary shall own a beneficial interest in the GUC Trust (as represented by the GUC Trust Interest(s) issued to such GUC Trust Beneficiary consistent with the Plan and Confirmation Order). The record holders of the GUC Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the GUC Trustee expressly for such purpose.

5.4    Evidence of Beneficial Interest.

5.4.1   Ownership of a GUC Trust Interest shall not be evidenced by any certificate, security, or receipt (unless otherwise determined by the GUC Trustee) or in any other form or manner whatsoever. Ownership of the GUC Trust Interests shall be maintained on books and records of the GUC Trust maintained by the GUC Trustee, which may be the Trust Claims Register. The GUC Trustee shall, upon the written request of a Holder of a beneficial interest, provide reasonably adequate documentary evidence of such Holder's General Unsecured Claim, as indicated on the books and records of the GUC Trust. The expense of providing such documentation shall be borne by the requesting Holder.

5.5   <u>No Right to Accounting</u>. Neither the GUC Trust Beneficiaries nor their successors, assigns, creditors, or any other Person shall have any right to an accounting by the GUC Trust, and the GUC Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the GUC Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the GUC Trust or as a condition for making any advance, payment, or distribution out of proceeds of GUC Trust Assets. Notwithstanding the foregoing, the GUC Trust Advisory Committee shall be entitled to the reporting required under this Agreement, including without limitation <u>Sections 7.5.4</u> and <u>8.9</u> hereof, and the GUC Trust Beneficiaries shall be entitled to review reports filed with the Bankruptcy Court pursuant to <u>Section 3.7</u> hereof.

5.6   <u>No Standing</u>. Except as expressly provided in this Agreement, if at all, a GUC Trust Beneficiary shall not have standing to direct or to seek to direct the GUC Trust or GUC Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the GUC Trust Assets.

5.7   <u>Requirement of Undertaking</u>. The GUC Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the GUC Trustee for any action taken or omitted by it as GUC Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that the provisions of this <u>Section 5.7</u> shall not apply to any suit by the GUC Trustee.

5.8   <u>Limitation on Transferability</u>. Absent the consent of the GUC Trustee, no holder of a GUC Trust Interest may Transfer all or any part of its GUC Trust Interest except (i) to the spouse of such holder, (ii) by devise or bequest, or (iii) by operation of law. Any such Transfer by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the GUC Trustee, and the GUC Trustee may continue to cause the GUC Trust to pay all amounts to or for the benefit of the assigning GUC Trust Beneficiaries until receipt of proper notification and proof of such Transfer. The GUC Trustee may rely upon such proof without the requirement of any further investigation. Notwithstanding any other provision to the contrary, the GUC Trustee may disregard any purported Transfer of General Unsecured Claims by will, intestate succession, or operation of law if sufficient necessary information (as reasonably determined by the GUC Trustee), including applicable tax-related information, is not provided by such purported transferee or assignee to the GUC Trustee. Any purported Transfer of all or any part of any GUC Trust Interest in violation of this <u>Section 5.8</u> shall be null and *void ab initio*.

5.9    <u>Exemption from Registration</u>. The parties hereto intend that the rights of the GUC Trust Beneficiaries arising under this Agreement shall not be "securities" under applicable laws, but none of the parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities law. If such rights constitute securities, the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws shall apply to their issuance under the Plan. No party to this Agreement shall make a contrary or different contention.

5.10    <u>Limitation on Distributions</u>. Holders of GUC Trust Class A Interests shall receive their respective distributions solely in an amount sufficient to satisfy the GUC Trust Class A Hurdle. Upon satisfaction of the GUC Trust Class A Hurdle, Holders of GUC Trust Class A Interests shall not be entitled to receive additional distributions on account of their GUC Trust Class A Interests (but, for the avoidance of doubt, shall be entitled to receive distributions to the fullest extent set forth herein on account of any GUC Trust Class B Interests that such Holder may hold, as applicable). For the avoidance of doubt, upon satisfaction of the GUC Trust Class A Hurdle, all Holders of GUC Trust Class B Interests shall be entitled to their *pro rata* share of 100% of the distributions made from the GUC Trust as set forth in <u>Section 4.1.2</u> hereof.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    <u>Parties Dealing With the GUC Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the GUC Trust or the GUC Trustee shall be entitled to rely on the authority of the GUC Trustee or any of the GUC Trust's agents to act in connection with the GUC Trust Assets. No Person that may deal with the GUC Trustee shall have any obligation to inquire into the validity or expediency or propriety of any transaction by the GUC Trustee or any agent of the GUC Trustee.

6.2    <u>Limitation of Liability.</u>

6.2.1    <u>Limitation on Liability of GUC Trustee</u>. Notwithstanding anything herein to the contrary, in exercising the rights granted herein, the GUC Trustee shall exercise its best judgment, to ensure that the affairs of the GUC Trust shall be properly managed and the interests of all the GUC Trust Beneficiaries are safeguarded to the extent provided in the Plan, Confirmation Order, and herein; but neither the GUC Trustee nor any of its accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliates, employers, and successors shall incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, unless the GUC Trustee or such other party has acted with gross negligence, fraud, or willful misconduct. The GUC Trustee's obligations, duties, and responsibilities under the Plan, the Confirmation Order, and this Agreement are qualified in their entirety by the availability of and reasonable likelihood of recovery of sufficient assets or Cash to fund the GUC Trustee's activities. Upon the appointment of a successor GUC Trustee, and any necessary delivery or transfer of the then remaining GUC Trust Assets to the successor GUC Trustee, the predecessor GUC Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors,

financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliates, employers, and successors shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as GUC Trustee). A successor GUC Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor GUC Trustee shall be in any way liable for the acts or omissions of any predecessor GUC Trustee, unless a successor GUC Trustee expressly assumes such responsibility. A predecessor GUC Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor GUC Trustee for any events or occurrences subsequent to the cessation of its role as GUC Trustee.

      6.2.2   <u>Limitation on Liability of the GUC Trust Advisory Committee.</u> Notwithstanding anything herein to the contrary, in exercising the rights granted herein, the GUC Trust Advisory Committee and each member thereof, shall exercise its and their best judgment, to ensure that the affairs of the GUC Trust shall be properly managed and the interests of all the GUC Trust Beneficiaries are safeguarded to the extent provided in the Plan, Confirmation Order, and herein; but neither the GUC Trust Advisory Committee, any member thereof, nor any of its or their accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliates, employers, and successors shall incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, unless the GUC Trust Advisory Committee or such other party has acted with gross negligence, fraud, or willful misconduct. The GUC Trust Advisory Committee's obligations, duties, and responsibilities under the Plan, the Confirmation Order, and this Agreement are qualified in their entirety by the availability of and reasonable likelihood of recovery of sufficient assets or Cash to fund the GUC Trust's activities. With respect to each GUC Trust Committee member, upon the appointment of a successor member, the predecessor member of the GUC Trust Advisory Committee and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliates, employers, and successors shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as a member of the GUC Trust Advisory Committee). A successor member of the GUC Trust Advisory Committee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor member of the GUC Trust Advisory Committee shall be in any way liable for the acts or omissions of any predecessor member of the GUC Trust Advisory Committee, unless a successor member of the GUC Trust Advisory Committee expressly assumes such responsibility. No predecessor member of the GUC Trust Advisory Committee shall have liability for the acts or omissions of any immediate or subsequent successor member of the GUC Trust Advisory Committee for any events or occurrences subsequent to the cessation of its role as a member of the GUC Trust Advisory Committee.

      6.3     <u>Indemnification</u>. The GUC Trustee and each member of the GUC Trust Advisory Committee and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate

brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliates, employers and successors (each, an "**Indemnified Party**") shall be indemnified for, and defended and held harmless against, by the GUC Trust and solely from the GUC Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the GUC Trust or the GUC Trust Beneficiaries. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud. The amounts necessary for the indemnification provided in this <u>Section 6.3</u> (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this <u>Section 6.3</u>) shall be paid by the GUC Trust out of the GUC Trust Assets. None of the GUC Trustee, the Debtors or Reorganized Debtors, any member of the GUC Trust Advisory Committee, or any other Indemnified Party shall be personally liable for the payment of any GUC Trust expense or claim or other liability of the GUC Trust, and no Person shall look to the GUC Trustee, the Debtors or Reorganized Debtors, any member of the GUC Trust Advisory Committee, or any Indemnified Party personally for the payment of any such expense or liability. The indemnification provided in this <u>Section 6.3</u> shall survive the death, dissolution, incapacity, resignation, or removal of the GUC Trustee, the members of the GUC Trust Advisory Committee, and Indemnified Party or the termination of the GUC Trust or this Agreement, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

## ARTICLE VII
## GUC TRUST ADVISORY COMMITTEE

7.1     <u>General</u>. Subject to Section 7.5 hereof, the GUC Trust Advisory Committee shall consult with the GUC Trustee on material matters relating to the administration, disposition and distribution of the GUC Trust Assets (including the income and proceeds therefrom), the reconciliation of the Class 3 General Unsecured Claims, and the investigation, pursuit, and settlement or other resolutions of the GUC Trust Claims and Causes of Action, in each case, as requested by the GUC Trustee or as specifically provided in the Plan, Confirmation Order, or this Agreement.

7.2     <u>GUC Trust Advisory Committee Membership</u>.

7.2.1     The GUC Trust Advisory Committee shall consist of five members: (i) two (2) members appointed by the Ad Hoc Noteholder Group, (ii) two (2) members appointed by the Committee, and (iii) one (1) independent member (the "**Independent Advisor**") mutually agreed upon among the Ad Hoc Noteholder Group and the Committee. At all times, at least one member of the GUC Trust Advisory Committee must be an Independent Advisor. Each GUC Trust

Advisory Committee member that is a natural person shall be at least 18 years of age. By execution hereof, each GUC Trust Advisory Committee member agrees to the terms set forth herein.

7.2.2   Each GUC Trust Advisory Committee member shall hold office until the earlier of (i) the termination of the GUC Trust, (ii) the resignation, death, or disability of such GUC Trust Advisory Committee member, or (iii) the removal of such GUC Trust Advisory Committee member in accordance with this Agreement.

7.2.3   Any Person serving as a member of the GUC Trust Advisory Committee may be removed and replaced upon a written showing of Cause (i) as determined by a unanimous vote of the remaining members of the GUC Trust Advisory Committee, or (ii) if a unanimous vote is not obtained, by an order of the Bankruptcy Court requested upon a motion of no less than a supermajority of the remaining members of the GUC Trust Advisory Committee. In the event of a removal pursuant to an order of the Bankruptcy Court, the removal shall be effective on the date specified in the order. Notwithstanding the removal of a member of the GUC Trust Advisory Committee pursuant to this <u>Section 7.2.3</u> and subject to applicable law, the rights of the removed member under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such removed member following the effectiveness of such removal.

7.2.4   Any member of the GUC Trust Advisory Committee may resign at any time by giving prior written notice of its intention to do so to the other members of the GUC Trust Advisory Committee, and to the Reorganized Debtors, which notice shall be at least thirty (30) days unless the resignation is due to a disability or other incapacity. In the event of a vacancy on the GUC Trust Advisory Committee, whether as a result of the resignation, death, disability or removal of an GUC Trust Advisory Committee member, (i) if, prior to the termination of service of such GUC Trust Advisory Committee member other than as a result of removal, such GUC Trust Advisory Committee member has designated in writing an individual to succeed them, such individual shall be their successor, subject to the consent of a majority of the remaining GUC Trust Advisory Committee members (and, if such GUC Trust Advisory Committee member was appointed by the Committee, the reasonable consent of the GUC Trustee), with such consent not to be unreasonably withheld, conditioned, or delayed, or (ii) if such GUC Trust Advisory Committee member did not designate a successor prior to the termination of their service in accordance with clause (i) of this <u>Section 7.2.4</u>, the remaining GUC Trust Advisory Committee members, acting by majority vote (and, if such GUC Trust Advisory Committee member was appointed by the Committee, the reasonable consent of the GUC Trustee, with such consent not to be unreasonably withheld or delayed), shall select a replacement GUC Trust Advisory Committee member, and, to the extent the former GUC Trust Advisory Committee member was representative of a particular constituency, use reasonable efforts to select a successor representing such constituency; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing, to the extent that a GUC Trust Advisory Committee member appointed by the Ad Hoc Noteholder Group resigns, then, prior to such resignation, such GUC Trust Advisory Committee member may appoint a successor in its sole and absolute discretion and, if such GUC Trust Advisory Committee member resigns without designating a successor, then the remaining GUC Trust Advisory Committee member appointed by the Ad Hoc Noteholder Group shall designate a successor in its sole and absolute discretion.  Notwithstanding the resignation of any member of the GUC Trust Advisory Committee pursuant to this <u>Section 7.2.4</u>, the rights of the resigning member under this Agreement with respect to acts or omissions occurring

prior to the effectiveness of such resignation will continue for the benefit of such resigning member following the effectiveness of such resignation.

7.3 <u>Compensation/Expense Reimbursement.</u> Only the Independent Advisor shall be entitled to receive reasonable compensation of **[●]** for attendance at and participation in each meeting of the GUC Trust Advisory Committee, subject to periodic adjustment as determined by the other members of the GUC Trust Advisory Committee (excluding the Independent Advisor). Each member of the GUC Trust Advisory Committee shall be entitled to reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the course of fulfilling their duties as a GUC Trust Advisory Committee member, <u>provided</u>, that such expenses shall not include the fees and expenses of any professional advisors engaged by such member. All such compensation and reimbursement of out-of-pocket expenses shall solely be made from the Expense Reserve.

7.4 <u>Authority</u>. Except as otherwise expressly provided herein, the GUC Trust Advisory Committee shall have no authority to bind or act on behalf of the GUC Trust.

7.5 <u>Rights and Powers of the GUC Trust Advisory Committee.</u> The GUC Trust Advisory Committee shall have the following limited rights:

7.5.1 <u>Removal of the GUC Trustee.</u> The GUC Trust Advisory Committee, as set forth in <u>Section 8.3</u> hereof, may remove or seek Bankruptcy Court authority to remove the then-sitting GUC Trustee.

7.5.2 <u>Replacement of the GUC Trustee</u>. Upon the resignation or removal of the GUC Trustee, the GUC Trust Advisory Committee, by a majority vote of the members of the GUC Trust Advisory Committee, may select a replacement GUC Trustee, subject to the approval of the Bankruptcy Court, as further set forth in <u>Section 8.5</u> hereof.

7.5.3 <u>Amendment of this Agreement</u>. The GUC Trust Advisory Committee, after consultation with the GUC Trustee, may amend this Agreement consistent with and subject to the terms of <u>Section 12.11</u> hereof.

7.5.4 <u>Additional Rights</u>. Notwithstanding any other provision of this Agreement, the following actions of the GUC Trustee shall be subject to the prior written consent of a majority of the members of the GUC Trust Advisory Committee:

(i) the resolution (or estimation) of any General Unsecured Claim that would result in an Allowed General Unsecured Claim (or estimated General Unsecured Claim) in excess of [$●] (a "**Material GUC**"); <u>provided</u>, <u>however</u>, that, in the event of a disagreement between the GUC Trustee and the GUC Trust Advisory Committee regarding a proposed resolution (or estimation) of any Material GUC, the parties may apply to the Bankruptcy Court for a resolution;

(ii) the commencement, settlement, compromise, or other resolution of any GUC Trust Claims and Causes of Action in which more than [$1,000,000] of damages is being sought or being paid;

(iii)    the sale, transfer, assignment or other disposition (including abandonment) of any GUC Trust Assets (including the income and proceeds therefrom) other than any GUC Trust Claims and Causes of Action having a valuation (for any individual transaction or series of related transactions) equal to or in excess of [$500,000];

(iv)    any increase in the amount of the Expense Reserve in excess of [$750,000]; and

(v)    entering into any arrangement for funding the activities in respect of any GUC Trust Claims and Causes of Action or other GUC Trust Assets (including, without limitation, litigation financing), or borrowing any funds or pledging of any portion of the GUC Trust Assets (including the income and proceeds therefrom); provided, however, that, any proposed funding (including, without limitation, litigation financing) that would be senior to or *pari passu* with the New Money GUC Trust Funding or adversely impact the rights of the holders of Class A Trust Interests (including, without limitation, the ability to receive the economic benefits of the distribution waterfall set forth in Article IV hereof) shall be subject to approval by a majority of GUC Trust Advisory Board including at least one member appointed by the Ad Hoc Noteholder Group; or

(vi)    the retention of any professional firm on a contingent fee or alternative fee arrangement.

7.6    <u>Reports</u>. Subject to <u>Section 8.9.1</u> hereof, the GUC Trust Advisory Committee is authorized (and may reasonably request) to receive and review: (i) periodically, the reports of the GUC Trustee as to the status of (a) the administration of the GUC Trust Assets, including the monetization of the non-Cash GUC Trust Assets through litigation, settlement, administration and pursuit of the GUC Trust Claims and Causes of Action; and (b) the Claims resolution process; (ii) to the extent not set forth in the foregoing (i)(a) and (b), other developments materially affecting the GUC Trust or its assets, including without limitation the GUC Trust Assets and any anticipated distributions, as and to the extent such developments arise; (iii) on a monthly basis, bank statements reflecting Cash expenditures and Cash available in the accounts of the GUC Trust; and (iv) any invoice for fees and expenses submitted by any agent or professional retained by the GUC Trustee.

7.6.1    <u>Meetings</u>. For the first twelve (12) months following the establishment of the GUC Trust, the GUC Trust Advisory Committee shall meet with the GUC Trustee on an approximately monthly basis, unless exigent circumstances require meeting on a more frequent basis. Thereafter, the GUC Trust Advisory Committee shall meet with the GUC Trustee on an as-needed basis, but no less than quarterly. Special meetings of the GUC Trust Advisory Committee may be called by the GUC Trustee or any member of the GUC Trust Advisory Committee on such notice as the parties deem appropriate. Meetings may be held in person, telephonically, by video, and/or by other electronic medium or media as the parties may deem convenient and appropriate.

7.6.2   Consent. To the extent this Agreement requires the consent of the GUC Trust Advisory Committee, unless otherwise stated herein, such "consent" shall mean the affirmative consent of a majority of the members constituting the whole GUC Trust Advisory Committee whether by a meeting in person or by written consent in lieu of a meeting (either of which may be done electronically).

7.7   Duties; Standard of Care. Each GUC Trust Advisory Committee member's rights and powers hereunder are exercisable solely on behalf of the GUC Trust and the GUC Trust Beneficiary consistent with, and in furtherance of, the purpose of the GUC Trust and not otherwise, and in accordance with applicable law. Each GUC Trust Advisory Committee member in the exercise of their rights and powers hereunder shall act in accordance with principles of good faith and fair dealing.

7.8   Confidentiality. Except as required in the performance of its duties, each member of the GUC Trust Advisory Committee shall, while serving on the GUC Trust Advisory Committee under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the GUC Trust Assets relate or of which they have become aware in their capacity as member of the GUC Trust Advisory Committee. The confidentiality provided in this Section 7.8 shall survive the death, dissolution, incapacity, resignation or removal of each member of the GUC Trust Advisory Committee, as applicable, or the termination of the GUC Trust.

7.9   Conflicts.

7.9.1   Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue on which the vote or consent of the GUC Trust Advisory Committee is required, each member of the GUC Trust Advisory Committee shall report to the GUC Trustee and the GUC Trust Advisory Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue), other than in their capacity as a holder of a General Unsecured Claim or Convertible Notes Claim, a GUC Trust Class A Interest or GUC Trust Class B Interest, or as a provider of the New Money GUC Trust Funding (which, for the avoidance of doubt, shall not and shall not be deemed to create a conflict or potential conflict hereunder). A member who has or who may have a conflict of interest shall be deemed to be a "**Conflicted Member**" and shall not be entitled to vote or take part in any action with respect to such matter or issue (provided that such member shall be counted for purposes of determining the existence of a quorum); the vote or action with respect to such matter or issue shall be undertaken only by members of the GUC Trust Advisory Committee who are not Conflicted Members, provided, that nothing herein shall preclude a Conflicted Member from being heard with respect to such matter or issue.

7.9.2   Prior to discussing with the GUC Trust Advisory Committee any matter that may create a conflict for one or more members of the GUC Trust Advisory Committee, each member of the GUC Trust Advisory Committee shall report to the GUC Trustee and the GUC Trust Advisory Committee any conflict of interest such member has or may have with respect to the matter at hand and fully disclose the nature of such conflict or potential conflict (including,

without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue). The GUC Trustee and the other GUC Trust Advisory Committee members shall then discuss the conflict or potential conflict and determine whether the disclosing GUC Trust Advisory Committee member is a Conflicted Member for purposes of such matter. A member who is determined to be a Conflicted Member with respect to a particular matter shall not be entitled to participate in discussions with respect to such matter. By way of illustration and without limitation, a potential settlement with a holder of a Disputed General Unsecured Claim might constitute one such conflict, if the settling party is similarly situated to any GUC Trust Advisory Committee member, or the institution with which such GUC Trust Advisory Committee member is affiliated, such that information with respect to such settlement might unfairly advantage such GUC Trust Advisory Committee member.

7.9.3    A matter or issue that ultimately may have an impact on a GUC Trust Advisory Committee member's recovery, but which does not directly relate to such General Unsecured Claim or its treatment, does not itself deem such GUC Trust Advisory Committee member a Conflicted Member. For the avoidance of doubt, a GUC Trust Advisory Committee member's status as a Holder of GUC Trust Class A Interests or as a provider of New Money GUC Trust Funding shall not create or be deemed to create a conflict, nor render such GUC Trust Advisory Committee member a Conflicted Member.

## ARTICLE VIII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

8.1    <u>Appointment</u>. The GUC Trustee has been selected pursuant to the provisions of the Plan and Confirmation Order to perform the obligations described hereunder, including to effectuate an orderly and efficient transition of the administration, in accordance herewith, of the GUC Trust Assets for the benefit of the GUC Trust Beneficiaries.

8.2    <u>Term of Service</u>. The GUC Trustee shall serve until the earlier to occur of (i) the termination of the GUC Trust in accordance with this Agreement and the Plan or (ii) the GUC Trustee's death, dissolution, incapacity, resignation, or removal.

8.3    <u>Removal of a GUC Trustee</u>. Any Person serving as GUC Trustee may be removed and replaced upon: (i) a unanimous vote of the members of the GUC Trust Advisory Committee, (ii) a written showing of Cause and a supermajority vote of the members of the GUC Trust Advisory Committee, with removal effectuated through an order of the Bankruptcy Court (<u>provided</u>, that nothing herein will preclude the removed GUC Trustee, following such supermajority vote, from seeking relief from the Bankruptcy Court), or (iii) by an order of the Bankruptcy Court requested upon a motion of a supermajority of the members of the GUC Trust Advisory Committee (<u>provided</u>, that nothing herein will preclude the removed GUC Trustee, following such supermajority vote, from seeking relief from the Bankruptcy Court). In the event of a removal pursuant to an order of the Bankruptcy Court, the removal shall be effective on the date specified in the order. Notwithstanding the removal of the GUC Trustee pursuant to this <u>Section 8.3</u> and subject to applicable law, the rights of the removed GUC Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such resigning GUC Trustee following the effectiveness of such removal.

8.4     Resignation of a GUC Trustee. The GUC Trustee may resign at any time by giving prior written notice of its intention to do so to the GUC Trust Advisory Committee, and to the Reorganized Debtors, which notice shall be at least thirty (30) days unless the resignation is due to a disability or other incapacity. Without limiting any other reporting or accounting obligations under the Plan or this Agreement, in the event of a resignation, the resigning GUC Trustee shall file with the Bankruptcy Court a full and complete written accounting of monies and GUC Trust Assets received, disbursed, and held during the term of office of that GUC Trustee. The resignation shall be effective on the later to occur of: (i) the date specified in the notice; or (ii) the appointment of a successor by the GUC Trust Advisory Committee, the acceptance by such successor of such appointment, and the approval of the successor's appointment by the Bankruptcy Court; provided, that if a successor GUC Trustee is not appointed or does not accept its appointment or if the appointment of a successor GUC Trustee has not been approved by the Bankruptcy Court within sixty (60) days following delivery of notice of resignation, the resigning GUC Trustee may petition the Bankruptcy Court for the appointment of a successor GUC Trustee. Notwithstanding the resignation of the GUC Trustee pursuant to this Section 8.4, the rights of the resigning GUC Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning GUC Trustee following the effectiveness of such resignation.

8.5     Appointment of Successor GUC Trustee. Upon the resignation, death, dissolution, incapacity, or removal of a GUC Trustee, the GUC Trust Advisory Committee, by no less than a majority thereof, shall appoint a successor GUC Trustee to fill the vacancy so created, subject to the approval of the Bankruptcy Court. Any successor GUC Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor GUC Trustee.

8.6     Powers and Duties of Successor GUC Trustee. A successor GUC Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and the Confirmation Order. Notwithstanding anything to the contrary herein, a removed or resigning GUC Trustee shall, when requested in writing by the successor GUC Trustee, execute and deliver an instrument or, instruments conveying and transferring to such successor GUC Trustee under the GUC Trust all the estates, properties, rights, powers, and trusts of such predecessor GUC Trustee.

8.7     Trust Continuance. The death, resignation, dissolution, incapacity, or removal of the GUC Trustee shall not terminate the GUC Trust or revoke any then-existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the GUC Trustee.

8.8     Compensation and Costs of Administration. The GUC Trustee shall be entitled to compensation of [$1,300] per hour, subject to standard annual adjustments upon 30 days' notice to the GUC Trust Advisory Committee, plus the reimbursement of reasonable expenses, all of which shall be charged against and paid out of the GUC Trust Assets without further Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement, the Plan, and the Confirmation Order). All costs, expenses, and obligations, including filing fees and hearings, incurred by the GUC Trustee (or professionals who may be employed by the GUC Trustee in administering the GUC Trust pursuant to Section 3.2, in carrying out their responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid solely from the GUC Trust Assets prior to any distribution to the GUC Trust Beneficiaries without further

Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement and the Plan).

8.9     Periodic Reporting. For the first twelve (12) months following the establishment of the GUC Trust, the GUC Trustee shall provide the GUC Trust Advisory Committee, on a monthly basis, information and reports concerning the administration of the GUC Trust, which shall include, but shall not be limited to, the status of Claims reconciliation, distributions, and amounts held in the Expense Reserve, ZY GUC Trust Account, and any Disputed Claims Reserve. After the initial twelve months, the GUC Trustee shall provide the GUC Trust Advisory Committee [and the Bankruptcy Court] with the information and reports they may reasonably request concerning the administration of the GUC Trust pursuant to Section 7.6 hereof. Additionally, the GUC Trustee shall provide the GUC Trust Advisory Committee (i) a report if and when the amounts held in the Expense Reserve initially falls below \$375,000; and (ii) with additional reports if and when amounts held in the Expense Reserve fall below \$150,000.

8.10     Confidentiality. Except as required in the performance of its duties, the GUC Trustee shall, while serving as GUC Trustee under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the GUC Trust Assets relate or of which they has become aware in their capacity as GUC Trustee. The confidentiality provided in this Section 8.10 shall survive the death, dissolution, incapacity, resignation, or removal of the GUC Trustee or the termination of the GUC Trust or this.

8.11     Final Accounting.  The GUC Trustee shall, (i) prior to the termination of the GUC Trust and (ii) in the event of the dissolution, resignation, or removal of the GUC Trustee prior to termination of the GUC Trust, within ninety (90) days after the occurrence of such event, render an accounting containing at least the following information:

    (i)    A description of the GUC Trust Assets (including the income and proceeds therefrom);

    (ii)    A summarized accounting in sufficient detail of all income, gains, losses, receipts, disbursements, and other transactions in connection with the GUC Trust and the GUC Trust Assets during the GUC Trustee's term of service, including their source and nature;

    (iii)    Separate entries for all receipts of principal and income;

    (iv)    The ending balance of all GUC Trust Assets (including the income and proceeds therefrom) as of the date of the accounting, including the cash balance on hand and the name(s) and location(s) of the depository or depositories where the cash is kept, and proposed final distributions if reporting is made in anticipation of termination of the GUC Trust;

    (v)    All known liabilities of the GUC Trust; and

    (vi)    All pending actions.

The accounting shall be filed with the Bankruptcy Court and the GUC Trust Beneficiaries shall have notice that the final accounting has been filed.

8.12    <u>Limitation on the GUC Trustee</u>.  Notwithstanding anything under applicable law, this Agreement, or the Plan to the contrary, the GUC Trustee shall not do or undertake any of the following:

(i)     Take any action that would jeopardize treatment of the GUC Trust as a "liquidating trust" for U.S. federal income tax purposes.

(ii)    Receive transfers of any listed stocks or securities, or any readily marketable securities, except as is absolutely necessary or required under the Plan and the Confirmation Order; <u>provided</u>, <u>however</u>, that in no event shall the GUC Trustee receive any such investment that would jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

(iii)   Receive or retain cash or cash equivalents in excess of a reasonable amount necessary to make applicable distributions to GUC Trust Beneficiaries, satisfy any liabilities of the GUC Trust, and establish and maintain the Expense Reserve and any Disputed Claims Reserve, as contemplated hereunder.

(iv)    Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or other temporary liquid investments, such as short-term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any Internal Revenue Service ("**IRS**") guidelines, whether set forth in IRS rulings, IRS revenue procedures, other IRS pronouncements, or otherwise.

(v)     Receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Confirmation Order; <u>provided</u>, <u>however</u>, that in no event shall the GUC Trustee receive or retain any such asset or interest that would jeopardize treatment of the GUC Trust as a "liquidating trust" for federal income tax purposes.

(vi)    Commence any Cause of Action exculpated or released or otherwise prohibited pursuant to this Agreement, the Plan, the Confirmation Order, and/or other Order of the Bankruptcy Court.

(vii)   Accept or take on, directly or indirectly, any obligation or other liability, monetary or otherwise, on behalf of the GUC Trust, that is not contemplated

29

by, or, in the reasonable judgment of the GUC Trustee, necessary or desirable to effectuate, the terms of the Plan.

(viii)   Take any action that is prohibited by the Plan or the Confirmation Order, except as otherwise authorized by order of the Bankruptcy Court.

## ARTICLE IX
## MAINTENANCE OF RECORDS

9.1    The GUC Trustee shall maintain accurate records of the administration of GUC Trust Assets, including receipts and disbursements and other activity of the GUC Trust. The Debtors' Claims Register may serve as the Trust Claims Register to the extent of any General Unsecured Claims reflected thereon, inclusive of scheduled General Unsecured Claims not superseded by a filed proof of claim. The books and records maintained by the GUC Trustee and any records of the Debtors transferred to the GUC Trust may be disposed of by the GUC Trustee at the GUC Trustee's cost at the later of (i) such time as the GUC Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the GUC Trust or its GUC Trust Beneficiaries and (ii) upon the termination and completion of the winding down of the GUC Trust.

9.2    Information Sharing for General Unsecured Claims Reconciliation. Upon reasonable request by the Debtors or the Reorganized Debtors, the GUC Trustee shall provide the Debtors or the Reorganized Debtors (as applicable) with its records in connection with the administration of the GUC Trust Assets, including receipts and disbursements and any other records evidencing the activities in Section 4.9 of this Agreement in order to assist the Debtors and Reorganized Debtors with reconciling the General Unsecured Claims on the Trust Claims Register, to the extent necessary and required.

## ARTICLE X
## DURATION OF TRUST

10.1    Duration. This Agreement shall remain and continue in full force and effect until the GUC Trust is terminated in accordance with the provisions of this Agreement and the Plan.

10.2    Termination of the GUC Trust. The GUC Trustee and the GUC Trust shall be discharged or terminated, as the case may be, at such time as all distributions required to be made by the GUC Trustee to the GUC Trust Beneficiaries have been made, but in no event shall the GUC Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless the GUC Trustee obtains the advice of tax counsel or a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the GUC Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the GUC Trust Assets. At the conclusion of the term of the GUC Trust, the GUC Trustee shall distribute the remaining GUC Trust Assets (including the income and proceeds therefrom), if any, in accordance with the Plan,

the Confirmation Order, and this Agreement, <u>provided</u>, <u>however</u>, that the GUC Trustee shall not be obligated to make a final distribution if the aggregate amount of the available cash is not sufficient to warrant the cost of making such distribution.  In connection with the termination of the GUC Trust, notwithstanding other provisions hereof, including <u>Section 3.1</u>, any remaining GUC Trust Assets that the GUC Trustee determines, in its reasonable discretion, are of inconsequential value or otherwise insufficient to support the cost of a distribution, may be transferred by the GUC Trustee to a non-profit charitable organization qualifying under section 501(c)(3) of the IRC.

10.3   <u>Continuance of Trust for Winding Up</u>. After the termination of the GUC Trust and for the purpose of liquidation and winding up the affairs of the GUC Trust, the GUC Trustee shall continue to act as such until its duties have been fully performed, including such post-distribution tasks as necessary to wind up the affairs of the GUC Trust. Subject to the provisions of <u>Section 9.1</u> hereof, after the termination of the GUC Trust, the GUC Trustee, for a time, may retain or cause to be retained certain books, records, GUC Trust Beneficiary lists, and certificates and other documents and files that shall have been delivered to or created by the GUC Trustee. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the GUC Trust and final distribution of the GUC Trust, the GUC Trustee shall have no further duties or obligations hereunder.

10.4   <u>No Termination by GUC Trust Beneficiaries</u>. The GUC Trust may not be terminated at any time by the GUC Trust Beneficiaries.

## ARTICLE XI
## DISPUTE RESOLUTION

11.1   Unless otherwise expressly provided for herein, the dispute resolution procedures of this Article XI shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Agreement.

11.2   <u>Informal Dispute Resolution</u>. Any dispute under this Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

11.3   <u>Formal Dispute Resolution</u>. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal

authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 11.4(d) below.

11.4    <u>Judicial Review</u>. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court of competent jurisdiction) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Trust. Each counterparty shall respond to the motion within the time period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

11.5    <u>Costs</u>. The GUC Trust shall bear the reasonable costs and expenses of the GUC Trustee and GUC Trust Advisory Committee in connection with any dispute that arises under this Trust Agreement; <u>provided</u>, that, for the avoidance of doubt, the GUC Trust will not be responsible for reasonable costs or expenses in connection with the transfer to the GUC Trust, pursuant to Section 2.4.1 hereof, of documents, books, and records of the Debtors reasonably requested by the GUC Trustee related to the GUC Trust Assets.

### ARTICLE XII
### MISCELLANEOUS

12.1    <u>Notices</u>. Unless otherwise expressly provided herein, all notices to be given to GUC Trust Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the GUC Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the GUC Trust or the Reorganized Debtors shall be in writing and shall be sent by email or registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery (if receipt is confirmed) addressed as follows:

If to the GUC Trust:

Heather L. Barlow, Trustee
Zynex GUC Trust
c/o
Vartabedian Katz Hester & Haynes LLP
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201

Attention: Candice Carson, Esq. and
            Martin Sosland, Esq.

E-mail: [candice.carson@vkhh.com
        martin.sosland@vkhh.com
        Barlow@barlowfiduciary.com]

with a copy to

[Vartabedian Katz Hester & Haynes LLP
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102

Attention: Jeff Prostok, Esq. and
           Mary Taylor Stanberry, Esq.
E-mail: [jeff.prostok@vkhh.com
        mary.stanberry@vkhh.com]


and

If to the Debtors or Reorganized Debtors:

[ Zynex, Inc.
9655 Maroon Circle
Englewood, CO 80112


Attention: John Bibb, Esq.
E-mail: jbibb@zynex.com
        legal@zynex.com]

with a copy to

[]

and

If to the GUC Trust Advisory Committee:

[]

    12.2   <u>No Bond</u>. Notwithstanding any state law to the contrary, the GUC Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction, unless the GUC Trustee decides in its reasonable judgment to obtain such bond or other security.

    12.3   <u>Insurance</u>. The GUC Trust is hereby authorized, to the extent reasonably available and affordable, to obtain and maintain all reasonable and customary insurance coverage, including any appropriate tail coverage, and to pay all insurance premiums and costs, for the protection, and to insure the acts and omissions, of itself, the GUC Trustee, and the members of the GUC Trust

Advisory Committee (each solely in such capacity), together with each of their accountants, agents, attorneys, bankers, consultants, executors, financial advisors, investment bankers, real estate brokers, transfer agents, representatives, employees or independent contractors, including coverage with respect to the liabilities, duties and obligations of the GUC Trustee and such accountants, agents, attorneys, bankers, consultants, executors, financial advisors, investment bankers, real estate brokers, transfer agents, representatives, employees or independent contractors under this Agreement and the Plan, which coverage shall be primary to any other coverage potentially available to such persons ("**Insurance Coverages**"). The GUC Trustee shall provide the members of the GUC Trust Advisory Committee with copies of Insurance Coverages upon request and shall advise the GUC Trust Advisory Committee, and any other potential beneficiary thereof, of any material changes in the Insurance Coverages. The cost of any such Insurance Coverages shall be an expense of the GUC Trust and paid solely out of the Expense Reserve.

12.4     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the [State of ●] (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

12.5     Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

12.6     Headings. The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

12.7     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

12.8     No Execution. All funds in the GUC Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a GUC Trust Beneficiary, and no GUC Trust Beneficiary or any other Person can execute upon, garnish, or attach the GUC Trust Assets or the GUC Trust in any manner or compel payment from the GUC Trust except by Final Order of the Bankruptcy Court. Payment will be solely governed by this Agreement and the Plan.

12.9     Intention of Parties to Establish Liquidating Trust. This Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such. Consistent with Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 91-15, 1991-1 C.B. 484 and Revenue Procedure 94-45, 1994-2 C.B. 684, the GUC Trust shall be treated as a liquidating trust pursuant to Treasury Regulation section 301.7701-4(d) and as a grantor trust pursuant to sections 671-677 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Agreement, this Agreement shall be construed so as to satisfy the requirements for liquidating trust status.  For all federal, state, and local income tax purposes, all parties shall treat the transfer of the GUC Trust Assets to the GUC Trust as a deemed transfer of the GUC Trust Assets by the Debtors to the GUC Trust Beneficiaries on account of their Allowed General Unsecured Claims under the Plan, followed by a deemed transfer of the GUC Trust Assets by the GUC Trust Beneficiaries to the GUC Trust in exchange for their beneficial interests in the GUC Trust. Thus, the GUC Trust Beneficiaries shall be treated as the grantors and owners of the GUC

Trust Assets for federal income tax purposes. Such transfers pursuant to the Plan shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to and to the extent permitted under section 1146(a) of the Bankruptcy Code.

12.10    Tax Reporting; Filing Requirements.

12.10.1. [In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the GUC Trustee shall file with the IRS annual tax returns for the GUC Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the GUC Trustee shall file in a timely manner for the GUC Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Allocations of GUC Trust taxable income among the GUC Trust Beneficiaries (other than taxable income allocable to, or retained on account of, a Disputed Claims Reserve or disputed ownership fund within the meaning of Treasury Regulation section 1.468B-9 (a "**DOF**")) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the GUC Trust had distributed all of its assets (valued at their tax book values, and other than assets allocable to any disputed claims reserve) to the holders of the GUC Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the GUC Trust.  Similarly, taxable loss of the GUC Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidation distribution of the remaining GUC Trust Assets.  The tax book value of the GUC Trust Assets for this purpose shall equal their fair market value on the Effective Date, or, if later, the date such assets were acquired by the GUC Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.]

12.10.2. The tax returns filed by the GUC Trustee shall report all GUC Trust earnings for the taxable year being reported. The "taxable year" of the GUC Trust shall be the "calendar year" as those terms are defined in IRC section 441.

12.10.3. The GUC Trustee shall file in a timely manner such other tax returns as are required by applicable law and pay any taxes shown as due thereon. The GUC Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the GUC Trustee's reasonable discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. All amounts properly withheld or deducted from distributions to a GUC Trust Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such GUC Trust Beneficiary shall be treated as part of the GUC Trust Distribution to such GUC Trust Beneficiary.  The GUC Trustee may require each GUC Trust Beneficiary to furnish to the GUC Trust (or its designee) its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited to a Form W-8BEN, Form W-8BENE-E, or Form W-9).

12.10.4. Tax Treatment of Disputed Claims Reserves. The GUC Trustee shall maintain Disputed Claims Reserves for Disputed General Unsecured Claims as provided in the Plan. The GUC Trustee may, in the GUC Trustee's reasonable discretion, determine the best way to report for tax purposes with respect to any Disputed Claims Reserves, including, but not limited

to, (i) filing a tax election to treat any and all Disputed Claims Reserves as DOF rather than to treat such reserve as a part of the GUC Trust or (ii) electing to report as a separate trust or subtrust or other entity. If an election is made to report any Disputed Claims Reserves as a DOF, the GUC Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including, but not limited to, the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due. For the avoidance of doubt, all of the GUC Trust's income shall be treated as subject to tax on a current basis consistent with Revenue Procedure 82-58, 1982-2, C.B. 847, as amplified by Revenue Procedure 91-15, 1991-1 C.B. 484 and Revenue Procedure 94-45, 1994-2 C.B. 684.

12.11    Amendment. The GUC Trust Advisory Committee, after consultation with the GUC Trustee and the Reorganized Debtors and with the approval of the Bankruptcy Court, may, from time to time, modify, supplement, or amend this Agreement, including to clarify any ambiguity or inconsistency, or render the Agreement in compliance with its stated purposes, and only if such amendment does not materially and adversely affect the interests, rights, treatment, or distributions of the GUC Trustee or any GUC Trust Beneficiary.  Notwithstanding the foregoing, the following provisions of this Agreement shall not be amended, modified, supplemented, or altered in any manner without the express written consent of the Ad Hoc Noteholder Group: Section 1.1.1 (solely as it relates to the members of the GUC Trust Advisory Committee appointed by the Ad Hoc Noteholder Group); Section 1.1.7; Section 4.1.1; Section 4.1.2; Article VII (in its entirety); any provision that is subject to Section 7.5; and any other provision the amendment, modification, supplementing, or alteration of would adversely impact the interests of the Holders of GUC Trust Class A Interests. Any such amendments to this Agreement consistent with the foregoing shall otherwise not in any way be inconsistent with the Plan or the Confirmation Order.

12.12    Waiver. No failure by any Party to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

12.13    Severability. If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

12.14    Further Assurances. Without limitation of the generality of Section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

12.15    Counterparts and Facsimile Signatures. This Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

12.16   <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the GUC Trust, the GUC Trustee, and the GUC Trust Assets, including the determination of all disputes arising out of or related to administration of the GUC Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Agreement or the administration of the GUC Trust. The parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, then the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[*The remainder of this page is intentionally left blank.*]

**3/2/26 DRAFT**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**DEBTORS**:

Zynex, Inc.,
Zynex Monitoring Solutions, Inc.,
Zynex NeuroDiagnostics, Inc.,
Zynex Medical, Inc.,
Pharmazy, Inc.,
 Kestrel Labs, Inc., and
Zynex Management LLC
By:_____
Name:
Title:

**GUC TRUSTEE**:

_____

Heather L. Barlow, solely in her capacity as GUC
Trustee and not in any individual capacity

**ACKNOWLEDGED & AGREED**

_____

[INSERT], solely in [his / her] capacity as a
member of the GUC Trust Advisory Committee and
not in any individual capacity

**ACKNOWLEDGED & AGREED**

[INSERT], solely in [his / her] capacity as a member of the GUC Trust Advisory Committee and not in any individual capacity

**ACKNOWLEDGED & AGREED**

[INSERT], solely in [his / her] capacity as a member of the GUC Trust Advisory Committee and not in any individual capacity

**ACKNOWLEDGED & AGREED**

_____

[INSERT], solely in [his / her] capacity as a
member of the GUC Trust Advisory Committee and
not in any individual capacity

**ACKNOWLEDGED & AGREED**

_____

[INSERT], solely in [his / her] capacity as a
member of the GUC Trust Advisory Committee and
not in any individual capacity

## Exhibit B

## Members of the New Board

The New Board of Reorganized Zynex will consist of five (5) individuals. In accordance with Article IV.D. of the Plan and section 1129(a)(5) of the Bankruptcy Code, the Debtors hereby disclose the identities and affiliations of certain of the individuals proposed to serve after confirmation of the Plan as directors of Reorganized Zynex on and after the Effective Date.

To the extent known, the remaining proposed directors will be identified and disclosed at or prior to the Confirmation Hearing.

Director compensation will be determined by the applicable New Board. The Reorganized Debtors reserve the right to select different or additional board members consistent with the terms of the New Organizational Documents, and set compensation according to policies to be adopted by the New Board on or after the Effective Date.

### List of Members of the New Board and Nature of Compensation

- *Steven Dyson*.   Steven Dyson currently serves as Chairman of the board and Chief Executive Officer at Zynex, Inc.  He has over 25 years of global experience in the medical technology and healthcare sectors. Most recently, he served in a senior leadership role at Apax Partners, a prominent private equity firm where he played a key role in acquiring, scaling, and divesting successful medtech and healthcare businesses. Mr. Dyson's portfolio included major names such as KCI, Rodenstock, Healthium Medtech, Unilabs, and Neuraxpharm, reflecting a deep understanding of how to drive performance across complex healthcare organizations.

- *Jacob Mercer.*   Mr. Mercer is a Partner, Head of Special Situations and Restructuring at Whitebox Advisors. Prior to joining Whitebox in 2007, Mr. Mercer worked for Xcel Energy Inc. (NASDAQ: XEL) ("Xcel Energy") as Assistant Treasurer and Managing Director. Before joining Xcel Energy, he was a Senior Credit Analyst and Principal at Piper Jaffray and a Research Analyst at Voyageur Asset Management. Mr. Mercer also served as a logistics officer in the United States Army. Mr. Mercer has served as a director on numerous private and public company boards of directors, including current roles at HC Minerals since March 2024, Malamute Energy, Inc. since 2016, Currax Pharmaceuticals LLC since 2018, and Hornbeck Offshore since 2023. Some past director roles include A.M. Castle & Co. (formerly OTC: CTAM) from 2017 to 2020, GT Advanced Technologies Inc. (formerly NASDAQ: GTAT) from 2019 to 2021, Hycroft Mining Holding Corporation (NASDAQ: HYMC), formerly Hycroft Mining Corporation, from 2015 to 2020, and Hi-Crush Inc. (formerly NYSE: HCR) from October 2020 to March 2024.  Mr. Mercer holds a B.A. with a double major in economics and business management from St. John's University. He also holds the Chartered Financial Analyst (CFA) and the Certified Turnaround Professional (CTP) designations.

- *Keith Fischer*.

**Officers of the Reorganized Debtors and Nature of Compensation**

The existing officers of the Debtors as of the date hereof shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the New Board to remove or replace them in accordance with the New Organizational Documents and any applicable agreements.  The nature of compensation for the continuing officers shall continue in such form as existed as of the Petition Date pursuant to any applicable employment agreements in place as of the Petition Date, except with respect to such officers' participation in the MIP, which pursuant to the Plan shall be determined by the New Board in consultation with the Company's Chief Executive Officer.

## Exhibit C

### Schedule of Assumed Executory Contracts and Unexpired Leases

The Debtors hereby provide notice, pursuant to section 365 of the Bankruptcy Code, of their intent to assume or assume and assign the executory contracts and/or unexpired leases set forth below (the "**Assumed Contracts**").

Except as otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have rejected all executory contracts and unexpired leases to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated by the Debtors as a contract or lease to be assumed on this Schedule of Assumed Executory Contracts and Unexpired Leases (as may be amended, modified, or supplemented in accordance with the Plan).

Neither the exclusion nor inclusion of any contract or lease on this Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or Reorganized Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action, and defenses with respect to the Assumed Contracts.

Any Counterparty to an Assumed Contract that believes any further amounts are due as a result of a Debtor's monetary default under its Contract or wishes to object to the assumption of such Contract under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), must assert such an objection (an "**Assumption Objection**") against the Debtor or Reorganize Debtors, as applicable, by **March 12, 2026 at 11:59 p.m. (prevailing Central Time)** (or such other date as may be established by the Court) (the "**Assumption Objection Deadline**").

For the avoidance of doubt, any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure Amount will be deemed to have assented to such assumption and Cure Amount. In accordance with Article VII.A of the Plan, the Debtors reserve the right to supplement or amend this Schedule of Assumed Executory Contracts and Unexpired Leases and to reject any Executory Contract or Unexpired Lease at any time prior to the Effective Date.

Zynex, Inc. / Zynex Medical, Inc.
Schedule of Assumed Executory Contracts and Unexpired Leases

| Exhibit # | Contract Counterparty Name | Contract Description(s) | Cure Amounts | Agreement Type |
|---|---|---|---|---|
| 1 | 2point | Online Terms of Use for Hosting and Support Services | $ - | Terms of Use |
| 2 | AAA Professional Cleaning Services LLC | | 8,191 | N/A |
| 3 | AcuityMD, Inc. | Master Services Agreement dated October 27, 2025 | - | MSA |
| 4 | Advanced Health Solutions | Master Purchase Agreement dated December 20, 2024 | - | MPA |
| 5 | Advantage Physical Therapy | Master Purchase Agreement dated April 20, 2024 | - | MPA |
| 6 | Aleyant System LLC | | 1,286 | N/A |
| 7 | Alorica Inc. | Zynex Medical Mutual Confidentiality Agreement dated January 24, 2024 | - | General Agreement |
| 8 | Alpha Capital | Services Agreement dated Sept 2023 | - | Services Agreement |
| 9 | Alteryx Inc. | Order Form dated October 13, 2025 (governed by the License Agreement) | - | License Agreement |
| 10 | Altitude Recycling Equipment LLC | CONSUMER EQUIPMENT LEASE dated November 3, 2020 | 315 | Lease Agreement |
| 11 | Amanda Kershaw | CONTRACT SERVICES AGREEMENT (signed 7.17.2024) | - | Independent Contractor Agreement |
| 12 | Andre Thomas Larr,i, PLLC | Letter of Protection and Deferred Payment Agreement dated September 27, 2024 | - | Letter of Protection |
| 13 | Anthem BCBS of Colorado | Payor Agreement | - | Payor Agreement |
| 14 | Apple Financial Services | Lease Agreement dated September 18, 2025 | 25,956 | Lease Agreement |
| 15 | ARAMARK Refreshment Services | Food Services Agreement dated March 9, 2022 | 452 | Services Agreement |
| 16 | Ashley Collinsworth | Independent Contractor Agreement dated January 8, 2026 | - | Independent Contractor Agreement |
| 17 | Atera Networks Inc | Order Form dated July 17, 2025 (includes General Terms of Use) | - | Terms of Use |
| 18 | Atlantic Specialty Insurance Company | Common Policy Declarations dated February 1, 2025; Workers' Compensation #4060474490004; Products Liability #8500001770002; Package Including General Liability #7110173990004 | - | Policy Documents |
| 19 | Availity, LLC | Subscription Agreement dated September 24, 2015 | - | Subscription Agreement |
| 20 | Avalara | Sales Order dated December 30, 2025 (Terms of Use) | - | Terms of Use |
| 21 | Axcess Accident Center | Master Purchase Agreement dated November 25, 2024 | - | MPA |
| 22 | Balaban Law, LLC | Letter of Protection and Deferred Payment Agreement dated October 10, 2024 | - | Letter of Protection |
| 23 | BCBS Federal | Payor Agreement | - | Payor Agreement |
| 24 | BCBS of Louisiana (PPO plans only) | Payor Agreement | - | Payor Agreement |
| 25 | BCBS of Minnesota | Payor Agreement | - | Payor Agreement |
| 26 | BCBS of Nebraska | Payor Agreement | - | Payor Agreement |
| 27 | BDO USA, P.C. | Agreement for Professional Services dated January 9, 2025 | 12,320 | Services Agreement |
| 28 | Beazley Insurance Company, Inc. | Excess D&O #V2A2D0250601; Cargo #FALV14SKL25PNGF; Cargo Cyber #CPBFALV14SKL25PNGF | - | Policy Documents |
| 29 | Berkley Professional Liability | Excess Insurance Policy #BPRO8135564 | - | Policy Documents |
| 30 | Blackline Systems Inc | Master Subscription Agreement dated February 28, 2022 | - | MSA |
| 31 | Bradley Law Group | Letter of Protection and Deferred Payment Agreement dated November 25, 2024 | - | Letter of Protection |
| 32 | Brandon J. Broderick | Representation Agreement dated August 15, 2024 | - | Engagement Letter |
| 33 | Bret Wise | Director Agreement dated November 11, 2025 | 42,257 | Indemnification Agreement |
| 34 | Brinton Business Ventures,Inc. dba Peak Refreshments | Account Service Agreement dated December 15, 2020 | 1,505 | Services Agreement |
| 35 | Britt Logan DiGiulio | Consulting Services Agreement  Between Britt Logan DiGiulio and Zynex Medical dated December 12, 2025 | - | Consulting Services Agreement |
| 36 | Brown Rudnick LLP | Confirmation Of Fee Agreement dated November 13, 2025 | - | Fee Agreement |
| 37 | Bull Attorneys, P.A. | Letter of Protection and Deferred Payment Agreement dated December 16, 2024 | - | Letter of Protection |
| 38 | Business Solution Partners LLC | CONSULTING SERVICES AGREEMENT dated November 14, 2023 | - | Consulting Services Agreement |
| 39 | Campos Law | Letter of Protection and Deferred Payment Agreement dated September 25, 2024 | - | Letter of Protection |
| 40 | Caresource OH | Payor Agreement | - | Payor Agreement |
| 41 | CareWorks TPA | Third Party Administrator Agreement | - | TPA Agreement |
| 42 | CBIZ | Engagement of CBIZ CPAs P.C. dated September 2, 2025 | - | Engagement Letter |
| 43 | CDW | | 22,360 | N/A |
| 44 | Celigo, Inc. | Online Terms of Use | - | Terms of Use |
| 45 | Centurion Training | Consultation Engagement dated December 12, 2025 | - | Engagement Letter |
| 46 | Chinchilla Leal, PLLC | Letter of Protection and Deferred Payment Agreement dated September 18, 2024 | - | Letter of Protection |
| 47 | Cigna Health and Life Insurance Company | Policy Documents (Medical and Vision) Group Insurance Policy | - | Policy Documents |
| 48 | Cisco Capital | Lease Agreement #500-50515273 | - | Lease Agreement |
| 49 | ClinCapture Inc | | - | N/A |
| 50 | Cognizant Technology Solutions US Corporation | Consent to Sublease dated April 9, 2021 | - | Lease Agreement |

Zynex, Inc. / Zynex Medical, Inc.
Schedule of Assumed Executory Contracts and Unexpired Leases

| Exhibit # | Contract Counterparty Name | Contract Description(s) | Cure Amounts | Agreement Type |
|---|---|---|---|---|
| 51 | Comcast Business | COMCAST ENTERPRISE SERVICES MSA dated December 19, 2024 | 8,813 | MSA |
| 52 | COMPARK GIP PROPERTY OWNER LLC | FIRST AMENDMENT TO LEASE AGREEMENT dated October 29, 2025 | - | Lease Agreement |
| 53 | Compass 360 LLC | Agreement for 3(16) Fiduciary Services dated June 15, 2023 | - | General Agreement |
| 54 | Concur Technologies, Inc | Order Form dated June 2, 2025 (includes Terms of Use) | - | Terms of Use |
| 55 | Cook, Barkett, Ponder & Wolz, L.C. | Letter of Protection dated August 15, 2024 | - | Letter of Protection |
| 56 | Corporation Service Company | MASTER SOFTWARE LICENSE & SERVICES AGREEMENT dated September 21, 2023 | - | Services Agreement |
| 57 | Corradino & Pappa LLC | Agreement to Provide Legal Services | - | Services Agreement |
| 58 | Corvel Healthcare Corporation | Third Party Administrator Agreement | - | TPA Agreement |
| 59 | Criado Law Group | Letter of Protection and Deferred Payment Agreement dated December 5, 2024 | - | Letter of Protection |
| 60 | CyraCom, LLC | Supplier Services Agreement dated August 1, 2022 | - | Services Agreement |
| 61 | D Fox Law | Letter of Protection and Deferred Payment Agreement dated September 30, 2024 | - | Letter of Protection |
| 62 | Dan Morris Law | Working Agreement dated March 20, 2023 | - | Working Agreement |
| 63 | Dang & Zapata Law | Letter of Protection and Deferred Payment Agreement dated November 26, 2024 | - | Letter of Protection |
| 64 | Dang Law Group | | - | Letter of Protection |
| 65 | Dario, Albert, Metz, Eyerman, Canda, Concannon, Ortiz & Krouse | Representation Agreement dated July 15, 2020 | - | Letter of Protection |
| 66 | De Lage Landen Financial Services, Inc | | 104,648 | Finance Agreement |
| 67 | Del Rio & Caraway, PC | Letter of Protection and Deferred Payment Agreement dated June 21, 2024 | - | Letter of Protection |
| 68 | Dialpad, Inc. | Service Order dated April 29, 2025 | 60,152 | Services Agreement |
| 69 | DME Plus (Now Apricus) | Third Party Administrator Agreement | - | TPA Agreement |
| 70 | Doran Financial Partners LLC | | 8,408 | N/A |
| 71 | DSV Air & Sea, Inc. | Power of Attorney and Terms of Services and Service | - | Services Agreement |
| 72 | EAC Funding, Inc. | Master Purchase Agreement dated April 1, 2024 | - | MPA |
| 73 | Eagleview IT LLC | Managed Detection and Response Service Agreement dated September 2024 | - | Services Agreement |
| 74 | Edwin Baca | Independent Contractor Agreement dated January 26, 2024 | - | Independent Contractor Agreement |
| 75 | Elizabeth Creason | Employment Agreement dated April 1, 2025 | - | Employment Agreement |
| 76 | Emitrr | Master Services Agreement dated November 11, 2025 | - | MSA |
| 77 | Employers Edge LLC | Service Agreement dated February 23, 2018 | - | Services Agreement |
| 78 | Endurance American Insurance Company | Excess Liability Policy Declarations #DOX30001477705 | - | Policy Documents |
| 79 | Equifax Workforce Solutions | Universal Service Agreement dated June 1, 2023 | - | Services Agreement |
| 80 | Exclaimer | Online Terms of Use | - | Terms of Use |
| 81 | Federal Insurance Company | The Chubb Primary Employment Practices Liability Insurance dated February 1, 2025 #J05984439; The Chubb Primary Commercial Crime Insurance #J05985249; The Chubb Primary Fiduciary Liability Insurance #J05984877 | 4,860 | Policy Documents |
| 82 | Flynn & Associates | Engagement Agreement dated November 25, 2024 | - | Engagement Letter |
| 83 | Fox Law | Letter of Protection and Deferred Payment Agreement dated December 2, 2024 | - | Letter of Protection |
| 84 | Freshworks Inc | Service Order Form dated July 30, 2025 (governed by Freshworks Terms of Service). | - | Terms of Use |
| 85 | Galen Danielson | CONTRACT SERVICES AGREEMENT (signed 7.17.2024) | - | Contract Services Agreement |
| 86 | Galerpin & Associates | | - | Letter of Protection |
| 87 | GIG CW COMPARK, LLC | Lease Agreement dated September 23, 2020 | - | Lease Agreement |
| 88 | Goff Law Group | Letter of Protection and Deferred Payment Agreement dated November 25, 2024 | - | Letter of Protection |
| 89 | Gray Reed | Engagement of Gray Reed for Restructuring and Workout Counsel dated December 18, 2025 | - | Engagement Letter |
| 90 | Great American Insurance Group | ExecPro Declarations for Public Solution Insurance Policy #DOLE069178 | - | Policy Documents |
| 91 | Greenlink Solutions | Master Purchase Agreement dated August 14, 2024 | - | MPA |
| 92 | Halkovich Law | Retainer Agreement dated November 12, 2025 | - | Retainer Agreement |
| 93 | Harrell Law Firm | Legal Services Agreement dated  June 3, 2024 | - | Services Agreement |
| 94 | Healthy Blue of Louisiana | Payor Agreement | - | Payor Agreement |
| 95 | Highmark BCBS of Pennsylvania | Payor Agreement | - | Payor Agreement |
| 96 | Highmark BCBS of West Virginia | Payor Agreement | - | Payor Agreement |
| 97 | HireRight, LLC | Modification to Service Agreement to Update Schedule of Fees | 83 | Services Agreement |
| 98 | HMSA CMS1500 Claims Filing | Payor Agreement | - | Payor Agreement |
| 99 | HomeLink TPA | Third Party Administrator Agreement | - | TPA Agreement |
| 100 | Horizon Casualty Services, Inc. | Horizon Casualty Services Ancillary Provider Agreement dated May 1, 2024 | - | Provider Agreement |

Zynex, Inc. / Zynex Medical, Inc.
Schedule of Assumed Executory Contracts and Unexpired Leases

| Exhibit # | Contract Counterparty Name | Contract Description(s) | Cure Amounts | Agreement Type |
|---|---|---|---|---|
| 101 | IMA Inc | Policy Documents | - | Policy Documents |
| 102 | Imperial PFS | Premium Finance Agreement dated February 24, 2025 | - | Finance Agreement |
| 103 | Information & Computing Services, Inc. | On-Line Services Agreement RF-Smart for NetSuite dated April 17, 2024 | - | Services Agreement |
| 104 | Injury Factoring LLC | Medical Lien and Security Interest Purchase and Servicing Agreement dated November 24, 2014 | - | MPA |
| 105 | Intellistack Acquisition Co f/k/a Formstack LLC | Online Terms of Use | - | Terms of Use |
| 106 | Ivan Lopez-Ventura | Letter of Protection and Deferred Payment Agreement dated August 20, 2024 | - | Letter of Protection |
| 107 | J. J. Keller & Associates, Inc. | | - | N/A |
| 108 | Jaloudi Law | Agreement to provide Legal Services dated August 1, 2025 | - | Services Agreement |
| 109 | JD Law Firm | Letter of Protection for Zynex | - | Letter of Protection |
| 110 | John Bibb | Employment Agreement dated August 18, 2025 | 1,600 | Employment Agreement |
| 111 | Jopari Solution, Inc | Trading Partner Subscription and Service Agreement dated February 9, 2022 | - | Services Agreement |
| 112 | Joshua R. Disbrow | ZYNEX, INC. INDEMNIFICATION AGREEMENT dated July 2, 2025 | - | Indemnification Agreement |
| 113 | Julia Thibault | Employment Agreement dated June 16, 2025 | - | Employment Agreement |
| 114 | Juniper On Main | Apartment Lease Agreement dated August 28, 2025 | - | Lease Agreement |
| 115 | Keeper Security Inc | Terms of Use dated April 9, 2025 | - | Terms of Use |
| 116 | King Aminpour Car Accident Lawyer | Letter of Protection and Deferred Payment Agreement dated August 15, 2022 | - | Letter of Protection |
| 117 | Konica Minolta Business Solutions | Contract #S00582745 (061-0194724-000)  Inserter Base and Tower | 13,868 | Lease Agreement |
| 118 | Konica Minolta Business Solutions | Contract #S00672607 ( 061-0171670-0000) AccurioPress | 6,676 | Lease Agreement |
| 119 | Konica Minolta Business Solutions | Service Contract | 6,871 | General Agreement |
| 120 | Kotlar, Hernandez & Cohen, LLC | MEDICAL PROVIDER SERVICES AGREEMENT dated June 6, 2025 | - | Services Agreement |
| 121 | Kristin Andrud | Independent Contractor Agreement dated July 10, 2025 | - | Independent Contractor Agreement |
| 122 | Law Office of Benjamin Brushe, PLLC | Letter of Protection and Deferred Payment Agreement dated March 27, 2025 | - | Letter of Protection |
| 123 | Law office of Ramiro Lopez, PLLC | Letter of Protection and Deferred Payment Agreement dated December 18, 2024 | - | Letter of Protection |
| 124 | Leah Griffin | Consulting Agreement dated October 27, 2025 | - | Independent Contractor Agreement |
| 125 | Lien Partners LLC | Medical Provider Agreement dated August 16, 2024 | - | MPA |
| 126 | Lienstar, LLC | Master Purchase Agreement dated September 30, 2025 | - | MPA |
| 127 | LinkedIn Corporation - Recruitment | Terms of Use dated March 4, 2025 | 5,509 | Terms of Use |
| 128 | Louisiana Worker's Comp Corp (LWCC) | Third Party Administrator Agreement | - | TPA Agreement |
| 129 | Lynch Law Firm | Retainer Agreement dated December 12, 2024 | - | Retainer Agreement |
| 130 | Lyons Benenson & Company Inc | Engagement Letter dated November 29, 2025 | - | Engagement Letter |
| 131 | Marc L Schwartz P.C | Retainer Agreement dated September 30, 2025 | - | Retainer Agreement |
| 132 | Maroon Englewood LLC | Consent to Sublease dated April 9, 2021 | - | Lease Agreement |
| 133 | Marrick Medical Finance, LLC | Medical Provider Agreement dated January 21, 2015 | - | MPA |
| 134 | MDWise | Third Party Administrator Agreement | - | TPA Agreement |
| 135 | Medicaid Arizona - AHCCCS (Arizona Health Care Cost Containment System) | Payor Agreement | - | Payor Agreement |
| 136 | Medicaid California - Medi-Cal | Payor Agreement | - | Payor Agreement |
| 137 | Medicaid Colorado - Health First Colorado | Payor Agreement | - | Payor Agreement |
| 138 | Medicaid Illinois | Payor Agreement | - | Payor Agreement |
| 139 | Medicaid Indiana | Payor Agreement | - | Payor Agreement |
| 140 | Medicaid Iowa | Payor Agreement | - | Payor Agreement |
| 141 | Medicaid Kentucky | Payor Agreement | - | Payor Agreement |
| 142 | Medicaid Louisiana | Payor Agreement | - | Payor Agreement |
| 143 | Medicaid Michigan | Payor Agreement | - | Payor Agreement |
| 144 | Medicaid Montana | Payor Agreement | - | Payor Agreement |
| 145 | Medicaid Nebraska | Payor Agreement | - | Payor Agreement |
| 146 | Medicaid New Mexico | Payor Agreement | - | Payor Agreement |
| 147 | Medicaid New York | Payor Agreement | - | Payor Agreement |
| 148 | Medicaid North Carolina - NC Tracks | Payor Agreement | - | Payor Agreement |
| 149 | Medicaid Oklahoma - SoonerCare | Payor Agreement | - | Payor Agreement |
| 150 | Medicaid Oregon | Payor Agreement | - | Payor Agreement |

Zynex, Inc. / Zynex Medical, Inc.
Schedule of Assumed Executory Contracts and Unexpired Leases

| Exhibit # | Contract Counterparty Name | Contract Description(s) | Cure Amounts | Agreement Type |
|---|---|---|---|---|
| 151 | Medicaid Tennessee - TennCare | Payor Agreement | - | Payor Agreement |
| 152 | Medicaid Utah | Payor Agreement | - | Payor Agreement |
| 153 | Medicaid Vermont - Green Mountain Care | Payor Agreement | - | Payor Agreement |
| 154 | Medicaid Virginia | Payor Agreement | - | Payor Agreement |
| 155 | Medicaid Washington - Apple Health | Payor Agreement | - | Payor Agreement |
| 156 | Medicaid Wisconsin - ForwardHealth | Payor Agreement | - | Payor Agreement |
| 157 | Medicaid Wyoming - WHIPP | Payor Agreement | - | Payor Agreement |
| 158 | Medical Atlanta Spine & Ortho | Master Purchase Agreement dated July 26, 2024 | - | MPA |
| 159 | Medical Service Quotes TPA | Third Party Administrator Agreement | - | TPA Agreement |
| 160 | Medicare | Payor Agreement | - | Payor Agreement |
| 161 | MedPlex Injury | Master Purchase Agreement dated September 9, 2024 | - | MPA |
| 162 | MedPro Systems LLC | MedPro Systems Services Order (part of MSA) dated September 15, 2025 | - | MSA |
| 163 | Mellow Dog Enterprises LLC | ZYNEX, INC. INDEMNIFICATION AGREEMENT dated July 2, 2025 | - | Indemnification Agreement |
| 164 | MiCARE Capital, LLC | Professional Services Agreement dated October 1, 2024 | - | Services Agreement |
| 165 | Michael Cress | ZYNEX, INC. INDEMNIFICATION AGREEMENT dated July 2, 2025 | - | Indemnification Agreement |
| 166 | Michael Majoue | Employment Agreement dated March 6, 2025 | - | Employment Agreement |
| 167 | Monge & Associates | Letter of Protection and Deferred Payment Agreement dated February 18, 2025 | - | Letter of Protection |
| 168 | MSC One Call Care TPA | Third Party Administrator Agreement | - | TPA Agreement |
| 169 | Multi-Plan (Beech Street Corporation- Network Contract) | Third Party Administrator Agreement | - | TPA Agreement |
| 170 | Nemko USA, Inc. | Quotation and Terms of Use | 500 | N/A |
| 171 | Neustar, Inc. a Transunion Company | MSA dated May 2024 | 480 | MSA |
| 172 | NMW Law Firm | Letter of Protection for Zynex Medical dated January 28, 2021 | - | Letter of Protection |
| 173 | Northwood Security Health | Payor Agreement | - | Payor Agreement |
| 174 | OLD REPUBLIC PROFESSIONAL LIABILITY, INC. | Excess Side A Policy #ORPRO2210001135 dated September 26, 2025 | - | Policy Documents |
| 175 | Open Text Inc | RightFax Connect Terms of Services | - | Services Agreement |
| 176 | Optum TPA | Certain Provider Agreement | - | Provider Agreement |
| 177 | Oracle America Inc. | Agreement dated March 6, 2025 | - | General Agreement |
| 178 | Orchid Medical TPA | Third Party Administrator Agreement | - | TPA Agreement |
| 179 | Orsa Saiwai NA Corp | Payroll & HR Support Services Agreement dated August 21, 2025 | - | Services Agreement |
| 180 | Pain Free Atlanta / Village Chiropractic | Master Purchase Agreement dated November 1, 2024 | - | MPA |
| 181 | Paul S Aronzon | Director Agreement dated November 11, 2025 | - | Director Agreement |
| 182 | Pay2Day Lien Management LLC | Master Purchase Agreement dated November 29, 2023 | - | MPA |
| 183 | Preferred Medical TPA | Third Party Administrator Agreement | - | TPA Agreement |
| 184 | Presbyterian Health Plan | Payor Agreement | - | Payor Agreement |
| 185 | Prime Health Service Inc | Third Party Administrator Agreement | - | TPA Agreement |
| 186 | ProHealthcare LLC | Master Purchase Agreement dated March 6, 2025 | - | MPA |
| 187 | Prove Partners | Purchase and Assignment Agreement dated March 5, 2024 | - | Purchase Agreement |
| 188 | Province LLC | Engagement of Province - Corporate Financial Advisory dated October 23, 2025 | - | Engagement Letter |
| 189 | Quadient Inc | Online Terms of Use | - | Terms of Use |
| 190 | Red Rock Diagnostics, LLC | Master Purchase Agreement dated June 3, 2024 | - | MPA |
| 191 | Reed Smith LLP | Engagement of Reed Smith for General Risk Management and Compliance Assistance dated September 22, 2025 | - | Engagement Letter |
| 192 | Regal Voice, Inc | Regal Order Form dated October 31, 2025 (MSA) | - | MSA |
| 193 | Republic Services Inc | Terms and Conditions dated February 6, 2026 | 1,007 | Terms of Use |
| 194 | Retrievex Holdings Corp. | | 1,250 | N/A |
| 195 | Richard M Traynor | Independent Contractor Agreement dated October 7, 2025 | 1,663 | Independent Contractor Agreement |
| 196 | Rocky Mountain Reserve | Service Agreement dated October 10, 2024 | - | Services Agreement |
| 197 | Roth Staffing Companies LP | Master Services Agreement dated November 2, 2023 | - | MSA |
| 198 | Salesforce Inc | MSA | - | MSA |
| 199 | Samba Holdings Inc | Service Order dated May 28, 2020 (Terms of Use) | - | Services Agreement |
| 200 | Sandoval & James Law Firm | Letter of Protection and Deferred Payment Agreement dated September 19, 2024 | - | Letter of Protection |

See the Exhibit A for the footnotes.

**Zynex, Inc. / Zynex Medical, Inc.**
Schedule of Assumed Executory Contracts and Unexpired Leases

| Exhibit # | Contract Counterparty Name | Contract Description(s) | Cure Amounts | Agreement Type |
|---|---|---|---|---|
| 201 | Savant Labs, Inc | SAVANT LABS MASTER SERVICES AGREEMENT dated January 4, 2024 | - | MSA |
| 202 | Script GuideRX | Participation Agreement dated December 30, 2025 | - | General Agreement |
| 203 | Security Central, Inc. | Services Agreement dated October 8, 2024 | 171 | Services Agreement |
| 204 | Simpson Thacher & Bartlett LLP | Engagement Letter dated August 19, 2025 | - | Engagement Letter |
| 205 | Slack | Online Terms of Use | - | Terms of Use |
| 206 | Steven B Barnett / Barnett Consulting Services, Inc. | Independent Contractor Agreement dated March 1, 2024 | - | Independent Contractor Agreement |
| 207 | Steven Dyson | Employment Agreement dated August 18, 2025 | 34,849 | Employment Agreement |
| 208 | Steven Ullery | Independent Contractor Services Agreement dated June 16, 2025 | - | Independent Contractor Agreement |
| 209 | Sunlife | Employer FICA Match with W-2 Tax  Reporting Service Agreement dated September 25, 2024 | - | Services Agreement |
| 210 | Tax Compliance Inc. | Terms of Use dated September 5, 2025 | - | General Agreement |
| 211 | Templeton & Company LLP | 401(k) Plan 2024 Audit Engagement Letter dated February 11, 2025 | - | Engagement Letter |
| 212 | Thao My Thi Le | Employment Agreement dated March 6, 2025 | - | Employment Agreement |
| 213 | The Law Office of T. Chris Lewis | Letter of Protection and Deferred Payment Agreement dated June 9, 2025 | - | Letter of Protection |
| 214 | Thompson Law Group, PLLC | Blank Letter of Protection dated December 12, 2025 | - | Letter of Protection |
| 215 | Thomson Reuters | General Terms and Conditions dated August 2023 | - | General Agreement |
| 216 | Tipalti Inc | Order Form and Services Agreement dated April 30, 2024 | - | Services Agreement |
| 217 | Tokio Marine HCC / NAS Insurance Services, LLC | NetGuard Plus Coverage Policy #H25NGP25026600 dated February 3, 2025 | - | Policy Documents |
| 218 | Traub Law | Letter of Protection and Deferred Payment Agreement dated November 26, 2024 | - | Letter of Protection |
| 219 | Tricare East | Payor Agreement | - | Payor Agreement |
| 220 | Tricare West | Payor Agreement | - | Payor Agreement |
| 221 | UKG Inc. | UKG Pro Order dated February 29, 2024 (includes MSA). | - | MSA |
| 222 | USI Insurance Services, LLC | Client Service Agreement dated January 1, 2025 | 50,000 | Services Agreement |
| 223 | Vates | Online Terms of Use | - | Terms of Use |
| 224 | Vikram Bajaj | Employment Agreement dated August 18, 2025 | 1,600 | Employment Agreement |
| 225 | Vivo Agency | Master Services Agreement: Zynex, Inc. dated February 18th, 2026 | - | MSA |
| 226 | Voya Retirement Insurance & Annuity Company | Signed Application For Group Annuity Contract dated July 3, 2023 | - | Policy Documents |
| 227 | VXI Global Solutions, LLC | MSA dated October 25, 2022 | - | MSA |
| 228 | Winning Solutions Inc | Information Technology Consulting, and Contracting Services Agreement | - | Services Agreement |
| 229 | XL Specialty Insurance Company | Excess Policy dated March 5, 2025  #ELU20204625 | - | Policy Documents |
| 230 | Yampaglia Law Firm | Contract dated May 30, 2024 | - | Contract Services Agreement |
| 231 | Zia Medical LLC | Master Purchase Agreement dated May 14, 2024 | - | MPA |
| 232 | ZOHO | Order Form dated May 14, 2025 (Terms of Use) | - | Terms of Use |
| | | Total: $ | 427,649 | |

**Exhibit A to Schedule of Assumed Executory Contracts and Unexpired Leases**

| Zynex, Inc. / Zynex Medical, Inc. | 25-90810/ 25-90813 |
|---|---|

**Footnotes**

**Note: Listing of a contract or lease herein does not constitute an admission by the Debtors that such contract or lease is actually "executory" or "unexpired" and all of the Debtors' rights to recharacterize or reclassify such claim or contract are expressly preserved.**

**Footnote 1.**
- *The estimated Cure Amounts include prepetition and overdue obligations; amounts paid in the ordinary course during the bankruptcy case are not reflected in the cure calculation.*

**Footnote 2.**
- *Contracts listed are presented as applicable to both Zynex, Inc. and Zynex Medical, Inc., each of which is a Co-Debtor in these chapter 11 cases. For administrative completeness and to ensure comprehensive disclosure, contracts have been included for both entities regardless of which specific Debtor is the named signatory under the applicable agreement.*

**Footnote 3.**
- *Certain order forms or quotes listed constitute executory contracts that incorporate the applicable Terms of Service or Master Services Agreement and remain in effect for a defined contractual period.*

**Footnote 4.**
- *IMA Inc. served as the producer and broker for all associated insurance policies.*

## Exhibit D-1

**Second Amended and Restated Articles of Incorporation**

*Draft 3.2.26*

## SECOND AMENDED AND RESTATED
## ARTICLES OF INCORPORATION
## OF
## ZYNEX, INC.

The undersigned, [_____], hereby certifies that:

1.     He is the duly elected and acting President of Zynex, Inc., a Nevada corporation.

2.     The Articles of Incorporation of this corporation were originally filed with the Secretary of State of Nevada on December 31, 2001. The corporation's Articles of Incorporation were amended and restated on October 3, 2008.

3.     The Amended and Restated Articles of Incorporation of this corporation shall be amended and restated to read in their entirety as follows:

**ARTICLE 1.     NAME.** The name of the corporation is:

ZYNEX, INC.

**A R T I C L E   2 .     CAPITALIZATION.** The corporation is authorized to issue one class of capital stock designated as "Common Stock". The total number of shares which the corporation is authorized to issue is 1,000,000 shares of Common Stock, with a par value of $0.001 per share.

**ARTICLE 3.     DIRECTORS.** The members of the governing board shall be styled as directors. The number of directors may be increased or reduced in the manner provided for in the Bylaws of the corporation.

**ARTICLE 4.     INDEMNIFICATION.** The corporation shall indemnify its officers and directors and may indemnify any other person to the fullest extent permitted by law.

**ARTICLE 5.     DISTRIBUTIONS.** Subject to the terms of these Second Amended and Restated Articles of Incorporation and to the fullest extent permitted by the Nevada Revised Statutes, the corporation shall be expressly permitted to redeem, repurchase, or make distributions, as that term is defined in Section 78.191 of the Nevada Revised Statutes, with respect to the shares of its capital stock in all circumstances other than where doing so would cause the corporation to be unable to pay its debts as they become due in the usual course of business.

**ARTICLE 6.     LIABILITY OF DIRECTORS AND OFFICERS.** To the maximum extent permitted under the Nevada Revised Statutes, no director or officer of the corporation shall be personally liable to the corporation or its stockholders for damages as a result of any act or failure to act in his capacity as a director or officer.

4.     The foregoing Second Amended and Restated Articles of Incorporation have been duly and unanimously adopted and approved by this corporation's Board of Directors and stockholders in accordance with the applicable provisions of Chapter 78 of the Nevada Revised Statutes.

*Draft 3.2.26*

Dated this _____ day of _____, 2026.

/s/_____
[_____], President

**Exhibit D-2**

**Second Amended and Restated Bylaws**

*Draft 3.2.26*

**SECOND AMENDED & RESTATED BYLAWS**

**OF**

**ZYNEX, INC.**
**a Nevada corporation**
**(_____, 2026)**

ARTICLE I.

OFFICES

Section 1.　　Registered Office.  The registered office shall be maintained at such place as the Board of Directors shall determine from time to time.

Section 2.　　Other Offices.  The corporation may also have offices at such other places both within and without the State of Nevada as the Board of Directors may from time to time determine or the business of the corporation may require.

ARTICLE II.

STOCKHOLDERS

Section 1.　　Meetings.  All meetings of stockholders, for any purpose, may be held at such time and place, within or without the State of Nevada, as shall be stated in the notice of meeting or in a duly executed waiver of notice thereof.

Section 2.　　Annual Meeting.  The annual meeting of stockholders shall be held on the day and at the time set by the Board of Directors, if not a legal holiday, and if a legal holiday, then on the next regular business day following, at the hour set forth in the notice thereof.  At such annual meeting, the stockholders shall elect, by a plurality vote, a Board of Directors and transact such other business as may properly be brought before the meeting.  Notwithstanding the foregoing, in the event that the Directors are elected by written consent of the stockholders in accordance with Article II, Section 11 of these Bylaws and NRS 78.320, an annual meeting of stockholders shall not be required to be called or held for such year, but the Directors may call and notice an annual meeting for any other purpose or purposes.

*Section 3*.　　Notice of Annual Meeting.  Written notice of the annual meeting shall be given to each stockholder entitled to vote thereat at least ten (10) days but not more than sixty (60) days before the date of the meeting.  The notice must state the purpose or purposes for which the meeting is called and the time when, and the place where, the meeting is to be held.

Section 4.　　List of Stockholders.  The officer who has charge of the stock ledger of the corporation shall prepare and make a complete list of the stockholders entitled to vote for the election of Directors, arranged in alphabetical order, showing the address of and the number of shares registered in the name of each stockholder, and the list shall be produced and kept at the

1

time and place of election during the whole time thereof and be subject to the inspection of any stockholder who may be present.

Section 5.    Special Meetings.  Special meetings of the stockholders, for any purpose or purposes, unless otherwise prescribed by statute or by the Articles of Incorporation, may be called at any time by the Board of Directors, the President or the holders of a majority of the outstanding shares of capital stock of the Company entitled to vote at such meeting. Such request shall state the purpose or purposes of the proposed meeting.

Section 6.    Notice of Special Meetings.  Written notice of a special meeting of stockholders stating the purpose or purposes for which the meeting is called, time when, and place where, the meeting will be held, shall be given to each stockholder entitled to vote thereat, at least ten (10) days but not more than sixty (60) days before the date fixed for the meeting.

Section 7.    Limitation on Business.  Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 8.    Quorum.  Stockholders of the corporation holding at least a majority of the voting power of the corporation, present in person or represented by proxy, regardless of whether the proxy has authority to vote on all matters, shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the Articles of Incorporation.  If, however, a quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat, present in person or represented by proxy, shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented.  At any adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed.

Section 9.    Voting Required for Action.  Each outstanding share of stock, regardless of class or series, shall be entitled to one vote on each matter submitted to a vote at a meeting of stockholders, except as otherwise provided by these Bylaws and to the extent that the Articles of Incorporation or the certificate of designation establishing the class or series of stock provides for more or less than one vote per share or limits or denies voting rights to the holders of the shares of any class or series of stock.  The vote of a majority of the shares of the corporation present, either in person or by proxy, at any meeting at which a quorum is present shall constitute the act of the stockholders, unless the question is one upon which by express provision of the statutes or of the Articles of Incorporation, the Bylaws of the corporation, or an express agreement in writing, a different vote is required, in which case such express provision shall govern and control the decision of such question.  Voting for Directors shall be in accordance with Article II, Section 2, of these Bylaws.

Section 10.    Proxies.  Except as otherwise provided in the Articles of Incorporation or in a Certificate of Designation or similar document filed with the Secretary of State of Nevada in accordance with Section 78.1955 of the Nevada Revised Statutes, each stockholder may vote either in person or by proxy executed in writing by the stockholder, but no proxy shall be valid after the expiration of six (6) months from the date of its execution unless (a) coupled with an interest, or

(b) the person executing it specifies therein the length of time for which it is to be continued in force, which in no case shall exceed seven (7) years from the date of its execution.

Section 11.    <u>Action by Consent</u>.  Any action required or permitted to be taken at a meeting of the stockholders may be taken without a meeting if, before or after the action, a written consent thereto is signed by stockholders holding at least a majority of the voting power, except that if any different proportion of voting power is required for such action at a meeting, then such different proportion of written consents shall be required.  In no instance where action is authorized by written consent, need a meeting of stockholders be called or noticed.

Section 12.    <u>Telephonic Meeting</u>s.  Stockholders may participate in a meeting of stockholders by means of a telephone conference or similar method of communication by which all persons participating in the meeting can hear one another.  Participation in such meeting shall constitute presence in person at the meeting.

Section 13.    <u>Closing of Transfer Books/Record Date</u>.  The Board of Directors may close the stock transfer books of the corporation for a period not exceeding sixty (60) days preceding the date of any meeting of stockholders or the date for payment of any dividend or the date when any change or conversion or exchange of capital stock shall go into effect or for a period not exceeding sixty (60) days in connection with obtaining the consent of stockholders for any purpose.  In lieu of closing the stock transfer books, the Board of Directors may fix in advance a record date, not more than sixty (60) days or less than ten (10) days before the date of any meeting of stockholders, or the date for the payment of any dividend, or the date for the allotment of rights, or the date when any change or conversion or exchange of capital stock shall go into effect, or a date in connection with obtaining such consent, as a record date for the determination of the stockholders entitled to notice of, and to vote at, any such meeting, and any adjournment thereof, or entitled to receive payment of any such dividend, or to any such allotment of rights, or to exercise the rights in respect of any such change, conversion or exchange of capital stock, or to give such consent, and in such case such stockholders and only such stockholders as shall be stockholders of record on the date so fixed shall be entitled to such notice of, and to vote at, such meeting and any adjournment thereof, or to receive payment of such dividend, or to receive such allotment of rights or to exercise such rights, or to give such consent, as the case may be, notwithstanding any transfer of any stock on the books of the corporation after any such record date fixed as aforesaid. If no record date is fixed for such distribution or issuance, the record date shall be the date on which the resolution of the Board of Directors authorizing the distribution or issuance is adopted.

Section 14.    <u>Registered Stockholders</u>.  The corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends and to vote as such owner, and the corporation shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Nevada.

*Draft 3.2.26*

# ARTICLE III.

## DIRECTORS

Section 1.     Number.  The number of Directors which shall constitute the whole Board shall be fixed by the Board of Directors of the corporation at any regular or special meeting thereof (or appropriate written consent thereby) subject to any limitations prescribed in the Articles of Incorporation.  The Directors shall either be elected by written consent in accordance with Article II, Section 11 of these Bylaws and NRS 78.320 or at the annual meeting of the stockholders, except as provided in Sections 2 and 3 of this Article, and each Director elected shall hold office until his or her successor is elected and qualified or until the his or her earlier death, resignation, disqualification, or removal.  Directors need not be stockholders.  If, for any reason, Directors are not elected pursuant to NRS 78.320 or at the annual meeting of the stockholders, they may be elected at a special meeting of the stockholders called and held for that purpose.

Section 2.     Vacancies.  Vacancies and newly created directorships resulting from any increase in the authorized number of Directors or due to the death, resignation, disqualification, or removal of a director or otherwise, may be filled by a majority of the remaining Directors then in office, though less than a quorum, and the Directors so chosen shall hold office until their successors are duly elected and shall qualify, unless sooner displaced.

Section 3.     Removal by Stockholders.  Any Director or one or more of the incumbent Directors of the corporation may be removed from office at any time, with or without cause, by a vote of stockholders representing not less than two-thirds of the voting power of the issued and outstanding stock entitled to voting power (or such higher amount as may be set forth in the Articles of Incorporation), in which event the vacancy or vacancies so created shall be filled by a majority of the remaining Directors, though less than a quorum, as provided in Section 2 of this Article.  Notwithstanding the foregoing, in the event that any class or series of stockholders is entitled to elect one or more Directors, only the approval of the holders of the applicable proportion of such class or series is required to remove such Director(s) and not the votes of the outstanding shares as a whole.

Section 4.     Management of Business.  The business of the corporation shall be managed by its Board of Directors which may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Articles of Incorporation or by these Bylaws directed or required to be exercised or done by the stockholders.

Section 5.     Meetings.  The Board of Directors of the corporation may hold meetings, both regular and special, either within or without the State of Nevada.

Section 6.     Annual Meeting.  The first meeting of each newly elected Board of Directors may be held following the annual meeting of stockholders.  If such annual meeting of directors is not a regular meeting of the Board of Directors, such meeting may be held at such time and place as shall be specified in a notice given as hereinafter provided for special meetings of the Board of Directors or as shall be specified in a written waiver signed by all of the Directors.

*Draft 3.2.26*

Section 7. <u>Regular Meetings</u>. Regular meetings of the Board of Directors may be held without notice at such time and at such place as from time to time shall be determined by the Board.

Section 8. <u>Special Meetings</u>. Special meetings of the Board may be called by the Chief Executive Officer or the President on one (1) days' notice to each director, either personally or by telephone or electronic transmission, or at least three days if the notice is given by mail. Special meetings shall be called by the Chief Executive Officer or President in like manner and on like notice on the written request of a majority of the Directors.

Section 9. <u>Quorum and Voting</u>. A majority of the Directors then in office, at a meeting duly assembled, shall constitute a quorum for the transaction of business, and the act of the Directors holding a majority of the voting power of the Directors, present at any meeting at which there is a quorum, shall be the act of the Board of Directors except as may be otherwise specifically provided by statute or by the Articles of Incorporation. If a quorum shall not be present at any meeting of the Board of Directors, the Directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 10. <u>Meetings by Consent</u>. Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting if, before or after the action, a written consent thereto is signed by all members of the Board or of such committee, as the case may be.

Section 11. <u>Telephonic Meetings</u>. Members of the Board of Directors or any committee designated by the Board of Directors may participate in a meeting of the Board of Directors or committee by means of a telephone conference system or similar method of communication by which all persons participating in the meeting can hear one another. Participation in such meeting constitutes presence in person at such meeting.

Section 12. <u>Committees</u>. The Board of Directors, by resolution, resolutions or as set forth in these Bylaws, may designate one (1) or more committees, which, to the extent provided in the resolution, resolutions or in these Bylaws, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the corporation. Each committee must include at least one Director. The Board of Directors may appoint natural persons who are not Directors to serve on any committee. Each committee must have the name or names as may be designated in these Bylaws or as may be determined from time to time by resolution adopted by the Board of Directors. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors as and when required.

Section 13. <u>Compensation</u>. The Directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors. Directors shall not receive any stated salary for their services. No such payment shall preclude any Director from serving the corporation in any other capacity and receiving compensation therefore. Members of special or standing committees may be allowed like compensation for attending committee meetings.

Section 14.    <u>Chairman of the Board/Organization of Meetings</u>.  The Board of Directors may elect, among its members, a chairman of the Board of Directors.  The chairman of the Board of Directors, if one be elected, shall preside, if present and unless otherwise determined by the Board of Directors, at all meetings of the stockholders and at all meetings of the Board of Directors, and he or she shall perform such other duties and have such other powers as may from time to time be designated and assigned to him or her by the Board of Directors.  At each meeting of the Board of Directors, the chairman of the Board of Directors, or, in his or her absence or nonelection, a director chosen by a majority of the directors, shall act as chairman of the meeting.  The Secretary, or in the absence of the secretary, any person appointed by the chairman of the meeting, shall act as secretary of the meeting.

Section 15.    <u>Resignation</u>. A director may resign at any time by giving written notice to the Board of Directors, its chair, or to the Secretary of the Corporation. A resignation is effective when the notice is given unless a later effective date is stated in the notice. Acceptance of the resignation shall not be required to make the resignation effective. The pending vacancy may be filled before the effective date, but the successor shall not take office until the effective date.

<u>ARTICLE IV.</u>

<u>NOTICES</u>

Section 1.    <u>General</u>.  Notices to Directors and stockholders shall be in writing and delivered personally or mailed to the Directors or stockholders at their addresses appearing on the books of the corporation.  Notice by mail shall be deemed to be given at the time when the same shall be mailed.  Notice to Directors may also be given by other media, including electronic transmission, if the sending of notice by such other media may be verified or confirmed.  Notice to stockholders may also be given by other media, including electronic transmission, in the manner and to the extent permitted by statute.

Section 2.    <u>Waiver of Notice</u>.  Whenever any notice is required to be given under the provisions of the statutes or of the Articles of Incorporation or of these Bylaws, a waiver thereof in writing, signed by the person or persons entitled to said notice, whether before or after the time stated therein, shall be deemed equivalent thereto.

<u>ARTICLE V.</u>

<u>OFFICERS</u>

Section 1.    <u>General</u>.  The officers of the corporation shall be chosen by the Board of Directors and shall at a minimum consist of a President, a Secretary and a Treasurer.  The Board of Directors may also choose a Chairman of the Board, Chief Executive Officer, Chief Financial Officer and one (1) or more Assistant Secretaries and Assistant Treasurers.  Two (2) or more offices may be held by the same person.  The officers of the corporation shall exercise such authority and perform such duties as shall be determined from time to time by these Bylaws or the Board of Directors. Each of such officers shall serve until his or her successor is duly appointed and qualified, but any officer may be removed by the Board at any time with or without cause and with

or without hearing or notice of hearing.  Vacancies among the officers by reason of death, resignation or other cause shall be filled by the Board.

Section 2.      <u>Appointment</u>.  The Board of Directors shall appoint the officers of the corporation who shall hold office at the pleasure of the Board of Directors.  No officer need be a member of the Board of Directors.

Section 3.      <u>Other Officers</u>.  The Board of Directors may appoint other officers and agents as it shall deem necessary who shall hold their positions for such terms and exercise such powers and perform such duties as shall be determined from time to time by the Board unless otherwise received in writing.  Any such officer or agent may be removed at any time, with or without cause, by the Board of Directors unless otherwise agreed in writing.

Section 4.      <u>Compensation</u>.  The salaries and other compensation of all officers of the corporation shall be fixed by the Board of Directors unless otherwise agreed in writing.

Section 5.      Powers and Duties of Officers. The powers and duties of the officers of the Corporation shall be as provided from time to time by resolution of the Board of Directors or by direction of an officer authorized by the Board of Directors to prescribe the duties of other officers. In the absence of such resolution, the respective officers shall have the powers and shall discharge the duties customarily and usually held and performed by like officers of corporations similar in organization and business purposes to the Corporation, subject to the control of the Board of Directors.

<u>ARTICLE VI.</u>

<u>SHARES OF CAPITAL STOCK</u>

Section 1.      <u>Certificates</u>.  The shares of the Corporation's stock may be certificated or uncertificated, as provided under NRS 78.235, and shall be entered in the books of the Corporation and registered as they are issued. Any certificates representing shares of stock shall be in such form as shall be approved by the Board of Directors. Every holder of stock represented by certificates and upon request every holder of uncertificated shares shall be entitled to have a certificate, signed by or in the name of the Corporation by any two authorized officers of the Corporation, representing the number of shares registered in certificate form. Any and all signatures on any such certificate may be facsimiles. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue. The name of the holder of record of the shares represented thereby, with the number of such shares and the date of issue, shall be entered on the books of the Corporation.

Section 2.      <u>Lost Certificates</u>.  The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the corporation alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost or destroyed.  When authorizing such issuance of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition

precedent to the issuance thereof, require the owner of such lost or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require and to give the corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the corporation with respect to the certificate alleged to have been lost or destroyed.

Section 3.     Transfer of Stock. Transfers of share certificates and the shares represented thereby shall be made on the books of the Company only by the registered holder or by a duly authorized attorney.  Transfers shall be made only upon surrender of the share certificate or certificates.

ARTICLE VII.

GENERAL PROVISIONS

Section 1.     Dividends.  Dividends upon the capital stock of the corporation may be declared by the Board of Directors out of funds legally available therefore at any regular or special meeting.  Dividends may be paid in cash, in property, or in shares of the capital stock of the corporation.

Section 2.     Reserves.  Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends, such sum or sums as the Board of Directors from time to time, in its absolute discretion, thinks proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Directors shall think conducive to the interest of the corporation, and the Directors may modify or abolish any such reserve in the manner in which it was created.

Section 3.     Checks.  All checks or demands for money and notes of the corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

Section 4.     Fiscal Year.  The fiscal year of the corporation shall be fixed by resolution of the Board of Directors.

Section 5.     Seal.  The corporate seal, if there be one, shall have inscribed thereon the words, "State of Nevada."

Section 6.     Captions.  Captions used in these Bylaws are for convenience only and are not a part of these Bylaws and shall not be deemed to limit or alter any provisions hereof and shall not be deemed relevant in construing these Bylaws.

Section 7.     Interpretations.  To the extent permitted by the context in which used, words in the singular number shall include the plural, words in the masculine gender shall include the feminine and neuter, and vice versa. If any provisions of these Bylaws shall be found to be inconsistent with any provisions of the Articles of Incorporation, as the same may be amended from time to time, the Articles of Incorporation shall govern.

*Draft 3.2.26*

## ARTICLE VIII.

## AMENDMENTS

Section 1.     <u>Amendments</u>.  These Bylaws may be amended or repealed at any regular meeting of the stockholders or of the Board of Directors, or at any special meeting of the stockholders or of the Board of Directors, if notice of such alteration or repeal be contained in the notice of such special meeting.

*Draft 3.2.26*

**ZYNEX, INC.**

**SECRETARY'S CERTIFICATE**

The undersigned, _____, certifies as follows:

1.       I am duly elected and acting Secretary of Zynex, Inc., a Nevada corporation.

2.       Attached hereto is a true and correct copy of the Second Amended and Restated Bylaws adopted by the Board of Directors on _____, 2026.

         IN WITNESS WHEREOF, the undersigned has hereto set her hand on the _____ day of _____, 2026.

                                        /s/_____
                                        _____, Secretary

10

**Exhibit E**

**Summary of DOJ Settlement**

On February 17, 2026, Zynex, Inc. and Zynex Medical, Inc. ("**Zynex**") entered into a non-prosecution agreement (the "**NPA**") with the U.S. Attorney's Office for the District of Rhode Island (the "**Government**") resolving potential criminal liability arising from fraudulent billing and improper revenue recognition practices and other related conduct occurring between 2017 and August 2025 under Zynex's prior management. The Government agreed not to prosecute Zynex for such past conduct in exchange for admissions, cooperation, remediation, financial payments, forfeitures, and ongoing compliance obligations. Effectiveness of the NPA is conditioned upon approval by the United States Bankruptcy Court for the Southern District, Houston Division, of an order confirming Zynex's plan of reorganization, and Zynex's emergence from the Chapter 11 proceedings as a going concern.

Zynex's obligations under the NPA commence on February 17, 2026, and continue until the later of the date Zynex has paid the Criminal Monetary Payment (defined below) in full or December 31, 2034 (the "**Term**"). The Government may extend the Term by up to one year in the event of breach, or terminate the NPA early if reporting is no longer needed and all other provisions are satisfied.

Zynex admitted and accepted responsibility for prior misconduct that occurred by and through Zynex's former executives. This conduct is described in detail in the "Statement of Facts" attached to the NPA. Zynex also admitted that the facts in the Statement of Facts constitute violations of U.S. criminal law.

Zynex agreed to pay a "Criminal Monetary Penalty" of between USD $5,000,000 and $12,500,000. Zynex will pay the Criminal Monetary Payment on a quarterly schedule— April 20, July 20, October 20, and January 20 each year—over five years, with the first payment due April 20, 2029, and the final payment due January 20, 2034. The quarterly schedule derives from the total Criminal Monetary Penalty, which is performance-based and tied to FY2028 EBITDA:

| EBITDA Range | Quarterly | Annually | Total |
|---|---|---|---|
| *Above $27.5M* | $625k | $2.5M | $12.5M |
| *$22.5M–$27.5M* | $500k | $2.0M | $10M |
| *$17.5M–$22.5M* | $375k | $1.5M | $7.5M |
| *Below $17.5M* | $250k | $1.0M | $5M |

The NPA includes restrictive covenants that describe certain events that, subject to certain exceptions, trigger acceleration of the Criminal Monetary Payment, including a change in control, dissolution, bankruptcy, and impermissible dividends or equity redemptions. If these events occur on or before December 31, 2028, the Criminal Monetary Payment becomes USD $10,000,000 (*i.e.*, not EBITDA-based) and is due within ten days. If these events occur on or after January 1, 2029, the Criminal Monetary Payment does not change, but the unpaid balance becomes due within ten days. If, at any time, an individual who was an executive officer or director as of July 1, 2025, is

appointed or elected to any executive officer or director role at Zynex (or its parents or subsidiaries) or becomes a beneficial owner of 5% or more of any class of voting securities, Zynex breaches the NPA and the Criminal Monetary Payment becomes USD $12,500,000 and due with ten days.

Subject to limited offset for non-fraudulent assertions in defense of claims and litigation, Zynex also agreed to forfeit and release approximately USD $13,000,000 of unpaid claim amounts for claims submitted prior to September 1, 2025, and approximately USD $85,000,000 of unpaid claim amounts for TRICARE claims submitted during the period that the Defense Health Agency suspended Zynex from receiving TRICARE reimbursements (January 1, 2025, to present).

Zynex agreed to implement and maintain enhanced compliance and corporate governance reforms designed to prevent future misconduct, strengthen internal oversight, and ensure accountability under its new management. The Government did not require an independent compliance monitor for Zynex. Instead, Zynex must submit a detailed written compliance report to the Government within the first year of the Term.

Zynex is required to fully cooperate with the Government and other authorities with respect to ongoing investigations during the Term. This includes truthful, timely disclosure of all non-privileged facts, provision of documents, making personnel available, and hosting/maintaining a database containing certain data from Zynex's systems. Zynex also must promptly report any non-frivolous evidence or allegation of a U.S. criminal law violation during the Term and, at the end of the Term, the CEO and CLO will have to certify that Zynex satisfied this disclosure obligation.

Breach triggers include commission of a felony under U.S. criminal law, provision of deliberately false or misleading information, failure to cooperate, failure to implement or maintain a compliance program, violation of the former-executive restrictive covenant, and any other failure to fulfill obligations under the NPA. If Zynex breaches the NPA, the Government has discretion to prosecute Zynex for any known violations of U.S. criminal law, including the conduct described in the Statement of Facts, to the extent such violations are not time-barred as of the effective date of the NPA. Upon breach, statements and disclosures made during the Term become admissible, and Zynex waives certain suppression arguments. The Government decides imputation of conduct and whether to prosecute. If the Government notifies Zynex of breach, Zynex has 30 days to respond with explanation and remediation before the Government determines next steps.

## Exhibit F

**Summary of SEC Resolution**

On February 18, 2026, the United States Securities and Exchange Commission ("**SEC**") sent a termination notice to Zynex, Inc. ("**Zynex**" or the "**Company**"). The letter states that the SEC has concluded its investigation as to Zynex and does not intend to recommend an enforcement action by the Commission against the Company. Zynex continues to cooperate with the SEC's investigation into other parties and individuals related to the Zynex matter.

## Exhibit G

**Summary of Projected Recoveries**

**SUMMARY OF PROJECTED RECOVERIES IN CONNECTION WITH THE THIRD
AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11
PLAN OF REORGANIZATION OF ZYNEX, INC. AND ITS DEBTOR AFFILIATES**

On February 7, 2026, Zynex, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") filed the *Third Amended Combined Disclosure Statement and Joint Plan of Reorganization of Zynex, Inc and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 263] (including all exhibits and schedules thereto, and as may be amended, modified, or supplemented from time to time, including hereby, the "**Plan**," "**Disclosure Statement**," or "**Plan and Disclosure Statement**").[1]

In accordance with Article III.B.3 of the Plan and Disclosure Statement, the Debtors hereby file this Summary of Projected Recoveries (the "**Summary of Projected Recoveries**"). The estimated recovery range for Classes 2 and 3 below are based on certain assumptions regarding the value of causes of action that will be contributed to the GUC Trust, which resulted in a highly speculative recovery range for estimated General Unsecured Claims and Convertible Notes Claims of 2%-15%. Ultimately, the monetization of the assets and allowance of claims would be subject to the GUC Trustee's administration of the GUC Trust. Actual recoveries may vary significantly. Additional information regarding the GUC Trust and treatment of General Unsecured Claims and Convertible Notes Claims is included in the Plan and Disclosure Statement.

THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE SUMMARY OF PROJECTED RECOVERIES WILL BE REALIZED SHOULD THE PLAN BE APPROVED AND GO EFFECTIVE, AND ACTUAL RESULTS COULD VARY MATERIALLY AND ADVERSELY FROM THOSE SHOWN IN THE SUMMARY OF PROJECTED RECOVERIES. THE SUMMARY OF PROJECTED RECOVERIES PREPARED SOLELY FOR PURPOSES OF ESTIMATING RECOVERIES IN CONNECTION WITH PLAN SOLICITATION. NOTHING CONTAINED IN THE SUMMARY OF PROJECTED RECOVERIES IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION OR ADMISSION OF THE DEBTORS, INCLUDING, WITH RESPECT TO THE ALLOWANCE OF ANY CLAIM.

| Class | Designation | Projected Recovery |
|---|---|---|
| Unclassified Claim | Administrative Expense Claims | 100% |
| Unclassified Claim | DIP Claims | 100% |
| Unclassified Claim | Priority Tax Claims | 100% |
| Unclassified Claim | Professional Fee Claims | 100% |
| Class 1 | Other Priority Claims | 100% |
| Class 2 | Convertible Notes Claims | 2% - 15% |
| Class 3 | General Unsecured Claims | 2% - 15% |
| Class 4 | Intercompany Claims | 0% |
| Class 5 | Intercompany Interests | 0% |
| Class 6 | Existing Interests | 0% |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**<u>Exhibit H</u>**

**Transaction Steps Memorandum**


To be filed in advance of Confirmation Hearing

## **Exhibit I**

### **Exit Credit Agreement Term Sheet**

Pursuant to Article III.A.2 of the Plan, each DIP Lender will receive its Pro Rata Share of 100% of the New Common Shares of Reorganized Zynex, subject to dilution by the MIP (and, if applicable, their *pro rata* allocation of any take-back debt issued on the Effective Date or otherwise pursuant to the Plan). The take-back debt will be issued pursuant to a credit agreement (the "**Exit Credit Agreement**") consistent with the term sheet (the "**Exit Credit Agreement Term Sheet**") attached hereto. Note that the Exit Credit Agreement is subject to ongoing negotiation and will be filed in advance of the Confirmation Hearing.

*Draft 3.2.26*

ZYNEX, INC.

$[10,000,000] TERM LOAN CREDIT FACILITY

Summary of Principal Terms and Conditions

_____

This Summary of Principal Terms and Conditions outlines certain key terms of a proposed term loan credit facility by and among the Borrower, Agent and Lenders, each as defined and described below. This Term Sheet is not binding on any party, does not constitute a commitment to lend and does not contain all of the terms, conditions and other provisions of the transactions contemplated hereby. This Term Sheet is confidential and is subject to the execution of definitive documents acceptable to the parties in their sole discretion.

## I.  Parties

| | |
|---|---|
| Borrower: | Zynex, Inc., a Nevada corporation |
| Guarantors: | Each direct and indirect subsidiary of the Borrower (the Guarantors and the borrower, collectively, the "Loan Parties") |
| Administrative Agent and Collateral Agent: | Wilmington Savings Fund Society, FSB |
| Lenders: | [SPV Holdco LLC] |

## II.  Facility

| | |
|---|---|
| Type and Amount: | A $[10,000,000] term loan credit facility (the "Term Loan", and together with all other obligations (including, without limitation, all interest, fees, costs and expenses the "Obligations"; such facility, the "Facility"). For the avoidance of doubt, (i) the Term Loan shall come into existence in exchange for the cancellation of a like amount of loans owed by Borrower to Lenders under that certain Senior Secured Debtor-In-Possession Credit Agreement, dated as of December 17, 2025, by and among ZYNEX, INC., a Nevada corporation, the guarantors from time to time party thereto, the lenders party thereto, and WILMINGTON SAVINGS FUND SOCIETY, FSB, as administrative agent and (ii) the Term Loans shall be deemed fully funded at the time that the Term Loans come into existence in connection with such exchange. |
| Stated Maturity Date: | The date that is 90 days after the final payment is due under the DOJ Settlement Agreement ("Stated Maturity Date")[1]. On the Stated Maturity Date, all Obligations then outstanding shall automatically convert into common stock issued by the Borrower at a conversion rate calculated based upon the Fair Market Value of such common stock on the Stated |

_____

[1] NTD: Date certain to be set forth in the definitive documentation.

Maturity Date. For the avoidance of doubt, (i) the Term Loans shall not convert to common stock in the Borrower at any time prior to the Stated Maturity Date and (ii) this provision shall be deemed null and void ab initio if a bankruptcy proceeding is filed by or against Borrower and/or any of its subsidiaries (or the Borrower otherwise becomes subject to an insolvency proceeding) prior to the Stated Maturity Date.

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Board of Directors of Lender, as the case may be, based on such factors as such Board of Directors, in the exercise of its reasonable business judgment, considers relevant.

## III. <u>Certain Economic Provisions</u>

Interest Rate:

The outstanding Obligations shall bear interest at [the Applicable Federal Rate][3.8% per annum], which interest shall be paid-in kind and capitalized quarterly at 11:59 p.m. ET on the last day of each calendar quarter. Calculation of interest shall be on the basis of the actual days elapsed in a year of 365/366 days.

Regularly Scheduled Principal Payments/Excess Flow Cash Flow Sweep:

None

Voluntary Prepayments:

Permitted to be paid in cash pursuant to terms customary for a facility of this type and size.

## IV. <u>Mandatory Prepayments</u>

Debt Incurrence:

The Borrower shall prepay the Term Loan within one (1) business day following the receipt by any Loan Party, in an amount equal to 100% of the proceeds of any debt incurrence that does not otherwise constitute permitted indebtedness under this Facility.

Change of Control:

The Borrower shall prepay the Term Loan within one (1) business day following the occurrence of a Change of Control.

<u>Change of Control</u>: (i) SPV Holdco LLC fails to own at least 66 2/3 of membership interests in the Borrower or (ii) Borrower fails to own 100% of equity of its subsidiaries other than as permitted in the Facility.

## V.  Collateral

Collateral:

First-priority security interest in and lien on substantially all assets of the Loan Parties with limited exceptions which are customary for a facility of this type and size.

## VI. Certain Other Provisions:

Representations and Warranties, Covenants:

Documentation to contain representations and warranties customary for financings of this type and size.

Covenants:

Documentation to contain affirmative and negative covenants that are customary for financings of this type and size.  Dollar basket exceptions to negative covenants to be mutually agreed.  There shall be no incurrence-based exceptions to negative covenants.

Events of Default:

Documentation to contain events of default customary for financings of this type and size.

Voting:

Amendments, consents and waivers under the Loan Documentation will be subject to lender governance provisions that are customary for a credit facility of this type and size (with sacred rights being very limited on the spectrum of what is customary).

Assignments:

Loan documentation shall contain assignment provisions that are customary for financings of this type and size except that (i) no assignments shall be permitted to any competitor of the Loan Parties and (ii) any assignment of the Term Loan shall require the consent of the majority of the board of directors of the Lender.

Except in the case of an assignment to any person holding equity interest in the Lender as of the closing date of the Facility (each, a "Lender Affiliated Fund") or any affiliate of any Lender Affiliated Fund[2], any assignment that is approved by a majority of the board of directors of the Lender shall first be offered to each Lender Affiliated Fund as follows:

(a)  The Lender shall deliver a written notice (the "Assignment Notice") to each Lender Affiliated Fund specifying the principal amount of the Term Loan subject to assignment (such principal amount, the "Assigned Interest"), the purchase price, the proposed purchaser and any other material terms thereof.

---

[2] To the extent any equity has been issued under the MIP as of the closing date of the Facility, such equity shall be excluded from this exception to the right of first refusal.

(b)  Each Affiliated Lender Fund shall have [ten (10) days] after receipt of the Assignment Notice (the "Assignment Election Period") to notify the Lender in writing whether it (or it, on behalf of one or more of its affiliates) (an "Electing Affiliated Lender Fund") elects to purchase the Assigned Interests on the terms set forth in the Assignment Notice and shall close such assignment within [ten (10) days] after making such election.

(c)  If there is more than one Electing Affiliated Lender Fund, the principal amount thereof shall be allocated among the Electing Affiliated Lender Fund pro rata based on the aggregate equity interests in the Lender held by Affiliated Lender Fund of such Electing Affiliated Lender Fund at the time of such election (or in such other proportions as the Electing Affiliated Lender Funds may agree).

(d)  Any Affiliated Lender Fund that does not provide written notice (on behalf of itself or behalf of any of its affiliates) within the Assignment Election Period shall be deemed to have declined the offer.

| | |
|---|---|
| Right of First Refusal: | If any Loan Party proposes to obtain any debt financing (the "Refinancing Debt") the proceeds of which are intended to refinance, replace, renew, extend, or repay all or any portion of the Obligations (the "Refinanced Obligations"), the Borrower shall first offer the Lenders the opportunity to provide such Refinancing Debt as follows: |

(e)  The Borrower shall deliver a written notice (the "Refinancing Notice") to the Agent and Lenders specifying (x) the proposed amount of the Refinancing Debt, (y) the anticipated terms and conditions (including pricing, tenor, structure, and documentation requirements), and (z) the expected timing for consummation of the refinancing.

(f)  Lenders shall have fifteen (15) Business Days after receipt of the Refinancing Notice (the "Refinancing Election Period") to notify the Borrower and the Agent in writing whether it elects to provide all of the Refinancing Debt on the terms set forth in the Refinancing Notice and shall close such Refinanced Debt within forty five (45) days after making such election.

(g)  To the extent there is more than one Lender under the Facility, if more than one Lender elects to provide the Refinancing Debt, the available amount shall be allocated among the electing Lenders pro rata based on the aggregate principal amount of Term Loan

held by the electing Lenders at such time (or in such other proportions as the electing Lenders may agree).

(h) Any Lender that does not provide written notice within the Refinancing Election Period shall be deemed to have declined the offer.

Governing Law:                    State of New York